AMERICAN MUT. LIABILITY INS. CO. v. MATTHEWS et al.

No. 200, Docket 21613.

United States Court of Appeals Second Circuit.

Argued April 12, 1950.

Decided May 16, 1950.

Galli & Locker, New York City, Patrick E. Gibbons, New York City, Advocate, Frederic J. Locker and Raymond J. Scully, New York City, of counsel, Proctors for appellants.

Alexander & Ash, New York City, Edward Ash and Sidney A. Schwartz, New York City, Advocates, Proctors for appellee.

Before L. HAND, Chief Judge, and SWAN and CHASE, Circuit Judges.

SWAN, Circuit Judge.

This is a libel for contribution brought by an insurance company on behalf of its insured against a firm of stevedores. The facts are not in dispute and may be summarized as follows: Modesto Veloz, a stevedore employed by the stevedoring firm which was engaged in loading a steamship in New York Harbor, was injured by the breaking of a guy rope furnished by the ship. Instead of seeking compensation from his employer under the Longshoremen's and Harbor Workers' Compensation Act, he elected to bring an action against the shipowner, as he may under the Act, 33 U.S.C.A. § 933. His action was brought in the Supreme Court of New York for New York County. In such action Veloz recovered judgment, and the shipowner's insurer paid $15,000 in satisfaction thereof. The insurer then filed its libel for contribution to recover one-half of such payment plus one-half of its expenses in defending the state court action. From a decree in favor of the libellant for $7,500 and interest from date of payment, the firm of stevedores has appealed. The libellant has filed a cross-assignment of error based on disallowance of its claim for expenses.

The right of contribution is asserted on the theory that the shipowner and the firm of stevedores were joint tort-feasors in causing the injuries suffered by Veloz, the shipowner having been negligent in supplying a defective guy rope and the stevedoring firm having been negligent in using the guy rope, since the defect therein was patent. The primary question presented by the appeal is whether the Longshoremen's and Harbor Workers' Act is a valid defense to the asserted right of contribution.

The Act confers upon an injured employee within its coverage a right to compensation regardless of negligence or fault on the part of his employer. 33 U.S.C.A. § 904. And § 905 provides that "The liability of an employer prescribed in section 904 of this title shall be exclusive and in place of all other liability of such employer to the employee * * * and anyone otherwise entitled to recover damages from such employer at law or in admiralty on account of such injury * * * *"— with an exception not here relevant. Thus the statute exempts the employer from any duty to pay damages for negligently injuring his employee and substitutes therefor an absolute duty to pay the prescribed compensation. For a right of contribution to exist between tort-feasors, they must be joint wrongdoers in the sense that their tort or torts have imposed a common liability upon them to the party injured.[1] In the case at bar the shipowner and the stevedoring firm were not under a common liability to the injured employee, nor were they joint wrongdoers. His claim against his employer was not for damages, as was his claim against the shipowner, nor was it dependent upon any tort committed by his employer. Consequently the shipowner can have no right to contribution based on the theory that they were joint tort-feasors.

By contract an employer may become bound to indemnify his promisee against liability resulting from improper performance of the work undertaken by the employer. Such a case is Westchester Lighting Co. v. Westchester Estates, 278 N.Y. 175, 15 N.E.2d 567, involving the New York Workmen's Compensation Act, Consol.Laws, c. 77, upon which the Long-

1. A. L. I. Restitution § 86; Erie R. Co. v. Erie Transportation Co., 204 U.S. 220, 27 S.Ct. 246, 51 L.Ed. 450; Lehigh Valley R. Co. v. Cornell Steamboat Co., 218 U.S. 264, 31 S.Ct. 17, 54 L.Ed. 1039, 20 Ann. Cas. 1235; The Wonder, 2 Cir., 79 F.2d 312; Porello v. United States, 2 Cir., 153 F.2d 605, 607 (dictum).

324

shoremen's and Harbor Workers' Act was modeled. There an employee of the contractor was killed by gas escaping from a pipe which the contractor was engaged to repair upon premises of Westchester Estates. The decedent's widow having recovered a judgment against the land owner, the latter sued the employer for indemnity and the employer pleaded. that a provision of the state statute almost identical with 33 U.S.C.A. § 905 exempted it from tort liability to the widow. But the court held that the plaintiff could recover, not by virtue of the widow's right but on the employer's promise to do the. work properly. A similar decision under the Longshoremen's Act is Rich v. United States, 2 Cir., 177 F.2d 688. In both of those cases, the primary cause of injury to the employee was breach of a contractual duty owed to the promisee to do the work properly. In .the case at bar no promise by the employer can be implied that he will not use equipment furnished him by the shipowner to be used for the very purpose to which it was put. Nor can a promise be implied that he will use care to detect any defect in the equipment which patently existed when the equipment was delivered for use by the employer. To imply such a promise would mean that the employer agreed to protect the shipowner against liability arising out of the shipowner's own negligence. In the absence of an express promise, such an implication would be utterly unreasonable. Hence we can find no contractual basis for indemnity or contribution. To impose a non-contractual duty of contribution on the employer is *pro tanto* to deprive him of the immunity which the statute grants him in exchange for his absolute, though limited, liability to secure compensation to his employees.

It must be conceded, however, that a majority of district court cases which have dealt with the question hold contrary to the views above expressed.[2] They rely primarily on The Chattahoochee, 173 U.S. 540, 19 S.Ct. 491, 43 L.Ed. 801. That was a case of collision between a schooner and a steamship, both vessels being guilty of faulty navigation. It resulted in the total loss of the schooner and all her cargo; the steamship was uninjured. Damages were awarded to the libellants as owners of the schooner and as bailees of her cargo but the steamer was allowed to recoup one-half of the value of the cargo, despite the fact that the schooner was exempt from liability to owners of her cargo by reason of section 3 of the Harter Act.[3] At first blush it may seem that there is no difference between a statute which exonerates the carrying vessel from liability to its cargo, and one which exonerates an employer from liability to his employees for the negligent conduct of his business; and that, if the non-carrying ship which has been obliged to pay the cargo owners can recoup one-half from the carrying vessel, a shipowner who has been compelled to pay the damages sustained by the injured employee should similarly be able to recoup one-half from the employer. However, we think there is a valid distinction. The Harter Act was not intended to affect the liability of one vessel to the other in a collision case; "the relations of the two colliding vessels * * * remain unaffected by this act." The Chattahoochee, 173 U.S. at page 540, 19 S.Ct. at page 497. Each vessel owed the other a duty of careful navigation. A breach of that duty by the carrying vessel is a contributory cause, together with the non-carrying vessel's own negligence, in producing the damage which the non-carrying vessel suffers, namely, liability to owners of the cargo.[4] Such liability is one element of the total damages which under the admiralty rule both vessels are to bear equal-

2. Rederii v. Jarka Corp., D.C.Me., 26 F. Supp. 304; The Tampico, D.C.N.Y., 45 F.Supp. 174; The S. S. Samovar, D.C. Cal., 72 F.Supp. 574, 588; Portel v. United States, D.C.N.Y., 85 F.Supp. 458, 462; Contra: Johnson v. United States, D.C. Or., 79 F.Supp. 448; Frusteri v. United States, D.C.N.Y., 76 F.Supp. 667; Calvino v. Pan-Atlantic S. S. Corp., D.C.N.Y., 29 F.Supp. 1022.

3. 46 U.S.C.A. § 192.

4. Erie R. Co. v. Erie N. W. Trans. Co., 204 U.S. 220, 226, 27 S.Ct. 246, 51 L.Ed. 450; Cuzco v. The Sucarsco, 294 U.S. 394, 400, 55 S.Ct. 467, 79 L.Ed. 942.

ly when the faults of both contribute to the collision. In the case at bar the stevedoring firm never owed the shipowner a duty to discover defects in equipment which the shipowner furnished for its use in loading the ship. Its duty to discover patent defects in such equipment was owed only to its employees and that duty the Longshoremen's Act abolished, substituting therefor an absolute duty to pay compensation. Hence the attempted analogy between the Harter Act and the Act now before us cannot withstand analysis.

For the foregoing reasons we conclude that the libellants have no right to contribution from the respondents. Accordingly the judgment must be reversed and the libel dismissed.

This conclusion renders unnecessary a discussion of any other points presented in argument and briefs.

## L. HAND, Chief Judge (concurring).

I should not add anything to what my brothers say, were it not that I cannot agree with the distinction they make between The Chattahoochee, 173 U.S. 540, 9 S.Ct. 491, 43 L.Ed. 801, and the case at bar. The sunken schooner in that case caused injuries to the steamer for which she would have been liable, had she survived, and which went in reduction of her owner's damages; but the damages which the steamer had to pay to the cargo were of course no part of the injuries done to the steamer. Like the injuries to the steamer, they were indeed caused by the joint act of both the steamer and the schooner; but except for § 3 of the Harter Act each wrongdoer would have been liable *in solido* to the cargo, whose claim against each would have been independent of the steamer's claim against the schooner for her injuries. The question was whether the steamer could compel the schooner to contribute to the compensation for this independent wrong done to the cargo by the faults of both. I cannot understand how it serves to answer that question that the same acts which caused

damage to the cargo, also caused damage to the steamer. If that were so, it would follow that if the breaking of the guy wire in the case at bar had injured not only Veloz but some part of the ship, the ship would have been able to exact contribution for Veloz's injuries. I should certainly regard that as an altogether irrelevant circumstance, and I fancy that my brothers would agree. But, if it would be irrelevant, the absence of any injury to the ship cannot be a ground for distinguishing The Chattahoochee, supra.

I agree that the Longshoremen's and Harbor Workers' Compensation Act need not inevitably be construed to include a release, not only from direct claims by employees, but from contribution to third persons from whom employees have recovered; and the reason why I think it should be so construed is that it has imposed upon employers an absolute, though limited, liability, in exchange for a release from the preceding unlimited liability, conditional upon negligence. The release should, I submit, have the same scope as the imposed liability, which extends as well to injuries caused by a joint wrong, as to those caused by the wrong of the employer alone.

The release from liability to her cargo for faults of navigation which § 3 of the Harter Act grants to a ship, was also conditioned upon an imposed liability, for it depended upon the ship's due diligence in making herself seaworthy *cap-à-pie*.[1] It can therefore be argued that, since The Chattahoochee, supra, decided that release did not extend to joint faults, we should hold that the act at bar does not release an employer for a joint fault; and a number of district courts have so held. However, although it is true that § 3 did impose a new liability upon the ship, the burden of it was very slight. Before the Harter Act the owner, as a common carrier, had not been free to release himself by contract from his liability for negligence,[2] and under § 2, 46 U.S.C.A. § 191, he obtained the power to do so, if he used

1. May v. Hamburg-Amerikanische, etc. Gesellschaft, 290 U.S. 333, 54 S.Ct. 162, 78 L.Ed. 348.

2. Liverpool & G. W. Steam Co. v. Phenix Ins. Co., 129 U.S. 397, 9 S.Ct. 469, 32 L. Ed. 788.

due diligence to man and equip the ship. That was a privilege; and, although he had had power to contract himself out of his duty of furnishing a seaworthy ship, which § 2 took away, that disability extended only to cases where he had not used diligence to make her seaworthy. Thus, so far as concerned § 2, there was a balance of advantage and disadvantage. And while, as I have said, § 3 did make it a condition upon the release that due diligence should be used to make the ship seaworthy even in respects not relevant to the carriage, in practice that has not added a heavy burden.

Thus, the effect of the doctrine of The Chattahoochee, supra, was that the sum of these changes in the owner's duties was not enough to justify extending the release beyond direct claims of shippers. Whether, as *res integra*, that was right, is not important here; what is important is that the balance between the changes made there as a condition of the release, was very different from a similar balance in the case at bar. It is for these reasons that I do not think The Chattahoochee, supra, a precedent.