**SLATTERY v. MARRA BROS., Inc.**

**MARRA BROS., Inc. v. WM. SPENCER & SON CORPORATION.**

No. 89, Docket 21804.

United States Court of Appeals
Second Circuit.

Argued Dec. 7, 1950.

Decided Jan. 4, 1951.

Purdy, Lamb & Catoggio, New York City (Edmund F. Lamb and Thomas J. Irving, New York City, of counsel), for plaintiff.

Abraham M. Fisch, New York City (Sidney Schiffman, New York City, of counsel), for plaintiff-appellee.

Charles Landesman, New York City (Sol Deutsch, New York City, of counsel), for defendant-appellee.

Before L. HAND, Chief Judge, and SWAN and CHASE, Circuit Judges.

L. HAND, Chief Judge.

Marra Bros., Inc., appeals from that part of a judgment, entered on the verdict of a jury which awarded damages to the plaintiff for injuries suffered while he was at work as a member of a stevedoring gang upon a pier in New Jersey. It also appeals from the remainder of the judgment which dismissed an amended complaint served by it against Wm. Spencer & Son Corporation under Rule 14(a), Fed.Rules Civ.Proc., 28 U.S.C.A., and which demanded that the Spencer Company indemnify it for any damages that the plaintiff might recover. It will be most convenient to consider first the action of Slattery v. Marra, as though it stood alone; and then the "third party action" of Marra v. Spencer.

### Slattery v. Marra Bros., Inc.

The defendant was the lessee of a New Jersey pier, alongside of which on the day of the accident lay a lighter which the Spencer & Son Corporation, a stevedore, had engaged to lade. There was a shed on the pier, whose side towards the slip was made up of a number of metal doors that had to be raised to gain access to the slip. These opened by sliding up and down vertically, each being raised by a chain and block, affixed as follows. At the centre of the door was fastened a vertical plate—a "fish-plate"—the top of which was above the top of the door, and at whose end was a hole. When the door was to be raised, the proper way was to pass the straight bar or bolt of a "shackle" through this hole, and to fix the other member of the "shackle" upon it. Into the "shackle" so completed a hook at the end of the block could then be

inserted and the door be raised by a chain passing from the block over a pulley fastened to the ceiling and down within reach of men, standing on the floor of the pier. On the day of the accident no "shackle" had been fixed through the hole in the "fish-plate," but instead, the hook at the end of a block had been pushed into the hole, which was too big to go clear through it, although the tip of it apparently went in far enough to allow the door to have been lifted in the past. At any rate one of the plaintiff's witnesses swore that he had seen the door so rigged four weeks before the accident. On the afternoon of the day in question a gang of stevedores employed by the Spencer Company, among whom was Slattery, the plaintiff, went to the pier, and found the door in question raised about two feet from the floor of the dock and held by the hook. Slattery and the gang boss went under it to the "string piece," as others of the gang were raising it, and started back before the gang had finished doing so. While Slattery was passing under it the second time, the hook became disengaged from the hole in the "fish-plate" and dropped to the floor, pinning his leg and doing the injuries for which he sued. The defendant raises a number of objections to the judgment. First, it says that, since Slattery was only a "business guest" or "invited person," and since the danger was open and apparent, as lessee of the premises, it owed him no duty. Next it says that the judge was wrong in describing its duty to the jury, if the danger was not open and apparent, because he did not limit it to reasonable precautions, but imposed an absolute liability. Lastly, it complains of several incidents during the course of the trial including rulings upon the evidence. We shall take these up in that order.

 It is the generally accepted doctrine that one, who is in possession of real property, owes to a "business guest" or "invited person" no greater duty than to advise him of any dangers which reasonable prudence would have foreseen and corrected.[1] Since the accident happened in New Jersey, the law of that state determined the liability; but apparently, its law also is that, if the "invited person" is made aware of the danger, the possessor of the premises owes him no further duty.[2] Since the defendant did not advise Slattery of the faulty way in which the door was rigged, and had no reason to assume that he would notice it, it was liable to him, provided that its failure to give him notice was an actionable cause of his injury. It answers that its failure was not an actionable cause, because the employees of the Spencer Company were themselves negligent in trying to raise the door, rigged as it was. Negligent indeed they were, but their negligence is irrelevant in deciding whether the defendant was liable to Slattery, unless it was justified in assuming that whoever had occasion to raise the door, would notice the danger, and would be sure to substitute a "shackle," of which there were plenty on the pier. Obviously the jury was justified in finding that a reasonable person who thought about it at all, would realize that a gang of stevedores who had to open such a door and found it fastened as it was, might well take the chance of using it as it was. The intervening wrong of a third person is no longer considered as "breaking the causal chain," or making the first wrong a "remote," and not a "proximate," cause, for all those preceding events, without which any later event would not happen, are "causes." What really matters is how far the first wrongdoer should be charged with forecasting the future results of his conduct; and the intervention of a later wrong is no different from the intervention of any other event. Section 449 of the Restatement of Torts states the present doctrine as it is now generally accepted, and we know of no reason to suppose that the courts of New Jersey would not follow it.

 The defendant's next objection is to the charge, which, however, quite conformed to what we have just said, as appears from the following excerpts. "A careless person is liable for all the natural

1. Restatement of Torts, § 343.

2. Broecker v. Armstrong Cork Co., 128 N.J.L. 3, 24 A.2d 194.

and probable consequences of his misconduct. If the misconduct is of a character which, according to the usual experience of mankind, is calculated to invite or induce the intervention of some subsequent cause, the intervening cause will not excuse him, and the subsequent mischief will be held to be the result of the original misconduct." Applying this to the case at bar the judge added: "Ought Marra Brothers in this instance to have reasonably foreseen that if the door was pulled up without the use of a shackle that injury might occur?"

■ The next objection is that at the close of the plaintiff's examination, as he was about to step down, the judge, *sua sponte*, asked him the following questions: "Are you married?" and have you "any children"? To the first question he answered "yes" and to the second, "six." He was excused and the defendant's attorney made no objection, nor did he ask for any ruling on the matter at any time, although the trial went on for several days. The only later occasion on which the answers could be thought to have been important was during the address to the jury of the plaintiff's attorney, in which he spoke of the plaintiff's inability to play with his children as an element of damages. The defendant objected, the court answered that that was not an element of damages, and there then followed a colloquy, irrelevant to this particular testimony. The law in federal courts is well settled that such testimony is irrelevant, beginning with Pennsylvania Company v. Roy;[3] and we have ourselves three times so ruled,[4] in the third instance making it the only ground for reversal. Other circuits have so held;[5] and the same is true of some at any rate of the state courts, though on such matters

these would not be relevant unless they were in New York and more liberal than the federal doctrine. Rule 43(a). The defendant, recognizing that it did not object at any stage, invokes the doctrine that in cases of grave prejudice we should reverse a judgment even when the aggrieved party has made no objection. We are not disposed to class this as such a situation; indeed in 1897 we refused to do so just because the defendant had not objected in a more extreme case. New York Electric Equipment Co. v. Blair, supra, 79 F. at page 899.[6]

■ Next is an objection to testimony that on the day after the *plaintiff's* accident the superintendent sent a workman to the door, and had him rig a "shackle" in the hole in the "fish-plate." The well settled rule that repairs made after an accident are not competent evidence of negligence[7] has an exception, recognized by New York decisions,[8] which Rule 43(a) in this case makes authoritative, because they admit the evidence, that, if the control of the cause of the injury when it happened is in issue, evidence of later conduct relevant to control is competent; and in this instance the defendant's control over the rigging of the door was in issue. True, it did concede that it had what it insisted upon calling "general control" of the pier; but it would not concede that it had control of the door. It said: "We admit we occupied the pier. We deny control in so far as it relates to particular control." The only meaning which can be given this is that it denied control over the rigging of the "shackle" on the door.

■ There remain only two other objections: first, to the cross-examination of the defendants' medical expert, and second,

3. 102 U.S. 451, 26 L.Ed. 141.

4. New York Electric Equipment Co. v. Blair, 2 Cir., 79 F. 896; Chesapeake & Ohio Ry. v. Stojanowski, 2 Cir., 191 F. 720; Lacorazzo v. Cantalupo, 2 Cir., 210 F. 875.

5. Baltimore & Ohio R. R. Co. v. Camp, 6 Cir., 81 F. 807; Chicago & Northwest-

ern Ry. v. Kelly, 8 Cir., 74 F.2d 31; Southern Pacific Co. v. Ralston, 10 Cir., 67 F.2d 958.

6. 2 Cir., 79 F. 896.

7. Wigmore, § 283.

8. Scudero v. Campbell, 288 N.Y. 328, 43 N.E.2d 66; Noble v. Marx, 298 N.Y. 106, 81 N.E.2d 40.

to the exposure to the jury of the plaintiff's injured leg. The first is so completely without foundation that we shall not discuss it; the second lay within the trial judge's discretion,[9] and we can find nothing to indicate any abuse of it. It is sometimes said that the jury should not be allowed to see repulsive injuries since they may excite their emotions. That may at times be true; but ordinarily it would seem that the very hideousness of the deformity was a part of the suffering of the victim, and could not rationally be excluded in the assessment of his damages. The judgment in favor of Slattery will be affirmed.

## Marra Bros., Inc. v. Spencer & Son Corporation

■ This appeal, as we have said, is from the dismissal of an amended complaint, in consequence of which the Spencer Company did not appear at the trial and the cause comes to us upon the complaint alone. The theory on which the complaint was drawn is that, if Slattery recovered from Marra Bros., Inc. because of defects in the way the door was rigged, it would be "because of the primary fault and neglect" of the Spencer Company, whose employees "were negligent among other things in that they used and employed defective, unsafe and dangerous appliances * * * more particularly for the purpose of lifting or opening the door"; and that this would entitle Marra Bros., Inc., not to contribution, but to full indemnity. In considering the legal effect of these allegations we take judicial notice of the New Jersey Workmen's Compensation Act, of which § 34:-15-7 N.J.S.A. provides that "When employer and employee shall by agreement, either express or implied * * * accept the provisions of this article" the employer shall pay compensation regardless of his negligence; and § 34:15-8 provides that "Such agreement shall be a surrender by the parties thereto of their rights to any other method, form or amount of compensation". Finally § 34:15-9 provides that

"Every contract of hiring * * * shall be presumed to have been made with reference to * * * this article", unless the parties shall have provided in writing to the contrary. We are therefore to assume that Slattery's contract of employment with the Spencer Company was a "surrender * * * of * * * any other method, form or amount of compensation" for any injuries which he might receive "in the course of his employment"; and the Spencer Company was under no liability to him of any kind. Therefore, the right of Marra Bros., Inc., to indemnity from the Spencer Company cannot rest upon any liability of that company to Slattery; and, if it exists at all, it is hard to see how it can arise in the absence of some legal transaction between the two corporations, other than that of joint tortfeasors: such as contract—as was the case in Burris v. American Chicle Co., 2 Cir., 120 F.2d 218, and Rich v. United States, 2 Cir., 177 F.2d 688—or as tort—as was the case in Westchester Lighting Co. v. Westchester Estates Corp., 278 N.Y. 175, 15 N.E.2d 567.

■ Yet it is true, at least when the putative indemnitor is not protected by a compensation act, that courts have at times based indemnity merely upon a difference between the kinds of negligence of the two tortfeasors; as for instance, if that of the indemnitee is only "passive," while that of the indemnitor is "active." Such cases may perhaps be accounted for as lenient exceptions to the doctrine that there can be no contribution between joint tortfeasors, for indemnity is only an extreme form of contribution. When both are liable to the same person for a single joint wrong, and contribution, *stricti juris*, is impossible, the temptation is strong if the faults differ greatly in gravity, to throw the whole loss upon the more guilty of the two. The only decision we have found in New Jersey[10] —the decision of a "Commissioner"—was one in which the only fault of the indemnitee was its failure to observe that the in-

9. Sun Oil Co. v. Rhodes, 8 Cir., 15 F.2d 790; Clark v. Brooklyn Heights R. R. Co., 177 N.Y. 359, 69 N.E. 647.

10. Popkin Brothers, Inc., v. Volk's Tire Co., 23 A.2d 162, 20 N.J.Misc. 1.

demnitor had failed properly to set the tire of a motor truck; and the result could have been put equally well upon a breach of the indemnitor's contract to set the tire. However that may be, we shall assume that, when the indemnitor and indemnitee are both liable to the injured person, it is the law of New Jersey that, regardless of any other relation between them, the difference in gravity of their faults may be great enough to throw the whole loss upon one. We cannot, however, agree that that result is rationally possible except upon the assumption that both parties are liable to the same person for the joint wrong. If so, when one of the two is not so liable, the right of the other to indemnity must be found in rights and liabilities arising out of some other legal transaction between the two. However, in the case at bar, not only was the Spencer Company not liable to Slattery, but it had no contract with Marra Bros., Inc., or any other legal relation with it except that of joint tortfeasor. Unless therefore there be some controlling authority to the contrary, the amended complaint was rightly dismissed.

There is no such authority: none whatever in New Jersey, and none outside to which we think its courts would feel bound to yield. In American Mutual Liability Ins. Co. v. Matthews, 2 Cir., 182 F.2d 322, we held that a shipowner, who had been held liable to a longshoreman for defect of the ship's tackle, should not have contribution against the longshoreman's employer because of the employer's negligence in performing a stevedoring contract with the shipowner. We so decided because we held that it was not a breach of the employer's contract for him to use defective tackle supplied by the shipowner; and it was only upon a breach of contract that the shipowner could rely. The decision of the Ninth Circuit in United States v. Rothschild International Stevedoring Co., 183 F.2d 181, can indeed hardly be reconciled with ours, for we can see no more reason to hold that it was a breach of the stevedore's contract with the ship to use a winch known to be defective than to use a defective stay. However, it is not clear that the decision did not presuppose that the stevedore failed in the performance of its contract with the ship; in which event the only difference between us is in the interpretation of such a contract. In any event it is not certain that the result would have been the same, had there been no contract whatever between the two. The decision of the same circuit in Booth-Kelly Lumber Co. v. Southern Pacific Co., 9 Cir., 183 F.2d 902, is not relevant, because it was expressly based upon a contract between the two tortfeasors; and incidentally it was the employer who was the indemnitee. The decision of the Eighth Circuit in American District Telegraph Co. v. Kittleson, 179 F.2d 946, can well be rested upon the employer's undertaking to the contractor to furnish the contractor's men with a safe place to work, whose breach was the cause of the injury to one of the employer's workmen. As we have already said, Westchester Lighting Co. v. Westchester Estates Corp., supra,[11] can also rest upon the tort which the indemnitor committed against the indemnitee. So far as we can see therefore there is nobody of sure authority for saying that differences in the degrees of fault between two tortfeasors will without more strip one of them, if he is an employer, of the protection of a compensation act; and we are at a loss to see any tenable principle which can support such a result. As always, it is embarrassing to have to pass upon the law of a state whose courts have not decided the question. However, in cases depending upon the "diversity jurisdiction" that often happens; we are then forced to prophecy, and in the case at bar our best forecast is that under the law of New Jersey the complaint was properly dismissed.

Judgment affirmed as to both causes of action.

11. 278 N.Y. 175, 15 N.E.2d 567.