**James HAGANS, Appellee,**

v.

**FARRELL LINES, Inc., Appellant,**

v.

**Lavino Shipping Company, Appellee.**

**No. 11703.**

United States Court of Appeals Third Circuit.

Argued Jan. 13, 1956.

Decided July 10, 1956.

Rehearing Denied Sept. 25, 1956.

478

Mark D. Alspach, Philadelphia, Pa. (Joseph J. Murphy, Robert W. Bikle, Krusen, Evans & Shaw, Philadelphia, Pa., on the brief), for appellant.

Thomas F. Mount, Philadelphia (Rawle & Henderson, Joseph W. Henderson, Philadelphia, Pa., on the brief), for Lavino Shipping Co.

Milton M. Borowsky (Freedman, Landy & Lorry, Philadelphia, Pa., on the brief), for James Hagans.

Before GOODRICH, KALODNER and STALEY, Circuit Judges.

KALODNER, Circuit Judge.

The plaintiff, James Hagans, brought this civil action, founded upon the diversity jurisdiction of the district court, against Farrell Lines, Inc. ("Farrell"), to recover damages for personal injuries sustained in the course of discharging cargo from the latter's vessel, S.S. "African Dawn". Hagans was a longshoreman in the employ of Lavino Shipping Co. ("Lavino"), a concern performing stevedoring services for the vessel. His complaint alleged negligence and unseaworthiness. Farrell joined Lavino as third-party defendant, alleging in its third-party complaint that Hagans' injuries were the result of Lavino's negligence, of unseaworthy conditions created by Lavino, or of open unseaworthiness of which Lavino had knowledge and to which it "deliberately" subjected its employees. Farrell sought indemnity from Lavino in the event it was held liable to Hagans.

The matter was tried before a jury, which returned a general verdict in favor of Hagans in his action against Farrell, and against Farrell in its third-party action against Lavino. The jury also answered specific interrogatories, about which more will be said later. The district court entered judgment in accordance with the general verdict and Farrell has appealed asserting errors in the instructions given by the court to the jury and in the denial of its request for binding instructions in its favor against Lavino.

The facts may be stated as follows:

The S.S. "African Dawn", arriving late at Philadelphia, Pennsylvania, on December 4, 1951, was moored in the middle berth of the south side of Pier 98 at about 2:00 o'clock p. m. Four gangs of longshoremen were assigned by Lavino to discharge her cargo, Hagans being positioned on the pier to assist in the discharge from the vessel's No. 4 hatch, the only hatch with which we are here concerned.

To discharge the cargo, the forward booms and winches of the No. 4 hatch were rigged with the offshore boom positioned over the hatch and the inshore boom extending over the pier. The after booms were not used because the booms would have been too low for the cargo to clear the ship's rail. The winches were electrically driven. To pay out cable, the winch operator would move hand control levers forward; to raise the cargo, he would move them backward. To stop the movement, he would put the levers in a "neutral" position, which called into play an automatic brake. Because of the position of the winches, the winch operator could not see into the wings of the hold or over the side of the vessel. Consequently, he depended upon hand signals from the longshoreman assigned as a hatch tender. The system followed was for the hatch tender to stand next to the inshore coaming of the hatch while the draft was being made up in the hold, giving the signal to the winch operator to remove the draft when ready. As that was done, he would cross over the deck to

the ship's rail and signal the lowering of the draft onto the pier.

When the booms had been rigged and before the first longshoreman commenced to operate the No. 4 hatch winches, a ship's electrician had completed making some adjustment to the control box on the inshore winch. The electrician told the operator, Oliver, that it was all right to use the winch, and a ship's officer was standing by. Shortly thereafter, in moving hatch covers, Oliver noticed that from time to time when he placed the levers in neutral the load would not hold fast. When he commenced to move cargo, he noticed that as the load was stopped in transit it sometimes would "drift" past his target.

A "couple" of drafts had been removed from the hold when orders were given to rig up a "save-all", i. e., a rope net spread between the vessel and the pier to catch cargo which might otherwise fall into the water as it was being moved in a sling from the hold to the pier. Oliver pulled the "save-all" up with the winch, then changed positions with his hatch tender, Harris, in accordance with a practice to rotate positions at fixed intervals. Oliver assisted in tying the "save-all" ropes at the ship's rail, and Hagans at the pier edge. After one draft had been moved, someone called to tighten the "save-all". Hagans was still engaged in tightening one of the ropes when a draft of bags of cocoa beans, weighing about a ton (which was light for the equipment), moved over the rail of the ship. Oliver had previously signalled for the draft to come out of the hold, and would have preceded the draft to the rail, except for the fact that he stumbled over a padeye welded to the ship's deck. Seeing Hagans bent over near the edge of the pier, Oliver signalled the winch operator to stop the draft and called to Hagans. The draft was then moving at its slowest speed and was about twelve to fifteen feet above the pier. The winchman immediately moved the levers into neutral, and a click was heard. However, the load "drifted" down, five or six feet of cable running off the winch drum, striking Hagans about the head and shoulders as he was about to stand up. The draft came to rest about three feet above the pier. The time of the accident was about 3:30 o'clock p. m.

Oliver told one of his fellow workers that the winches were not "acting right" soon after he commenced to use them, and after he finished his turn at the winches, which was just before the accident, he told his hatch foreman, Collick. Harris noticed that there was a "drift" of four to five feet after he took over the winches. There was evidence that in the normal use of a winch it sometimes "drifted" because the automatic brake became loose, and that the ship's electrician would make repairs. In this instance, after the accident the ship's electrician made some repairs to the winch involved, but there was still some drift.

The winches were ship's equipment, maintained and repaired by the ship's personnel. The contract between Farrell and Lavino required the ship to supply to Lavino adequate winches in good order. There was evidence, too, that the obligation to repair the winches was upon the ship, and that the stevedores were not permitted to make repairs.

The jury, immediately prior to returning its verdict, submitted to the district judge the following questions:

"1. If we conclude that the winches were defective and were the principal cause of the accident and the employees of Lavino only incidentally negligent must the verdict between Farrell and Lavino be in favor of the defendant Lavino?"

"2. If the answer to that question is yes may we now give our verdict?"

The district judge answered both questions affirmatively, and the jury stated that it was ready to render its verdict although it was offered further opportunity for deliberation.

The jury's general verdict, as already stated, was against Farrell and in favor

of the plaintiff, Hagans, and the third-party defendant, Lavino. In addition, the jury found,[1] in answer to specific interrogatories, that the winch involved was defective, that such defect was not the sole cause of the accident, that there was concurring negligence on the part of Lavino's employees, but that such concurring negligence was not the sole cause of the accident, and that Hagans was not contributorily negligent. We think it a necessary conclusion from the question addressed to the court by the jury, and the general verdict, that the jury must also have concluded that the defective winch was the substantial cause of the accident, and that the negligence of Lavino's employees was not a substantial cause of the accident.

The district court entered judgment in accordance with the general verdict, and Farrell prosecuted this appeal. It is our opinion that the judgment must be affirmed.

Insofar as the controversy between Hagans and Farrell is concerned, Farrell premises its appeal upon two alleged errors in the trial court's instructions to the jury. First, it maintains that the court, in reciting the evidence, assumed the truth of Hagans' evidence that there was a defect in the winch, and therefore the charge was "one-sided". Second, it maintains that the trial judge instructed the jury to disregard the expert medical testimony in determining the extent of Hagans' injuries. Neither contention is meritorious.

There is no question whatsoever that the district judge carefully placed the fact-finding job in the hands of the jurors, advising that their recollection of the evidence must control. The court merely recited the manner in which it was contended that the accident happened, albeit using the language of the witnesses that the load "drifted", and indeed, this was the only way in which the accident was described. The issue, whether the winch was defective was specifically left to the jury upon "the testimony of all of the witnesses, both for the plaintiff and the defendant." A review of the charge fails to convince us that the jury should have felt restricted in reaching the conclusion, which it did in answer to a specific interrogatory, that the winch was defective. A review of the evidence, however, leads to the conclusion that the jury could hardly have reached any other result.

The transcript of the court's charge included in the original record reports the following instruction:

"You heard all these doctors and I will not touch upon that phase of it; you heard these various doctors, and they are generally in agreement that the man was injured, but how far he was injured is a matter for you to decide *not on their testimony* but on the plaintiff's own testimony and on your general knowledge of conditions in the world in which we live today. You are going to pass judgment upon what injuries he has, the extent and duration of such injuries, and say how far he has been reduced in earning power; * * * I do not know about that, and the doctors have given us various views, and you will have to pass upon that * * * *" (Emphasis supplied.)

1. The relevant interrogatories and answers are as follows:

"1. Was the winch, which was in operation at the time of the accident, defective?" Answer: "Yes."

"2. If your answer to No. 1 is yes, was such defect the sole cause of the plaintiff's injuries?" Answer: "No."

"3. If your answer to No. 2 is no, were the plaintiff's injuries caused by the concurring negligence of those in charge of the vessel or the unseaworthiness of the vessel and the employees of Lavino Shipping Company?" Answer: "Yes."

"4. Were the plaintiff's injuries caused solely by the acts or omissions of the employees of Lavino Shipping Company in the work of unloading the cargo?" Answer: "No."

"5. Did the negligence or inattention of the plaintiff to any degree contribute to the cause of his injuries?" Answer: "No."

However, the court reporter filed a certificate that the word "only" was inadvertently omitted from the italicized portion of the charge quoted above, so that, as corrected, the transcription should read "not only on their testimony". The trial judge authorized correction of the record. As corrected, the charge is not erroneous, and we do not understand Farrell to contend otherwise.

Accordingly, we conclude that the judgment in favor of Hagans against Farrell must be affirmed.

█ Insofar as the controversy between Farrell and Lavino is concerned, Farrell asserts that it is entitled to judgment against Lavino as a matter of law, but if not, then to a new trial because of errors in the charge to the jury in respect of Lavino's responsibility for the conduct of its employees and of the legal responsibilities of Farrell and Lavino inter se. We do not reach the trial issues, because it is our opinion that, on the record, Farrell is not entitled to indemnity from Lavino.

█ It is clear that no recovery of contribution may be had by Farrell from Lavino, presupposing that they are joint tortfeasors. Halcyon Lines v. Haenn Ship Ceiling & Refitting Corp., 1952, 342 U.S. 282, 72 S.Ct. 277, 96 L.Ed. 318; Pope & Talbot, Inc., v. Hawn, 1953, 346 U.S. 406, 74 S.Ct. 202, 98 L.Ed. 143. However, in appropriate circumstances, where a relational duty exists between parties like Farrell and Lavino which one has violated to the loss of the other, indemnity is allowable. Ryan Stevedoring Co. v. Pan-Atlantic Steamship Corp., 1956, 350 U.S. 124, 76 S.Ct. 232; Crawford v. Pope & Talbot, Inc., 3 Cir., 1953, 206 F.2d 784; Read v. United States, 3 Cir., 1953, 201 F.2d 758; Rich v. United States, 2 Cir., 1949, 177 F.2d 688; Bethlehem Shipbuilding Corp. v. Joseph Gutradt Co., 9 Cir., 1926, 10 F. 2d 769; Mowbray v. Merryweather (1895) 2 Q.B. 640. And it is the general consensus that, in this class of cases, where the alleged indemnitor is subject to the Longshoremen's Compensation Act, 44 Stat. 1424 et seq., as amended, 33 U.S.C.A. § 901 et seq., the right to indemnity is independent of the duty owed by the indemnitor to the injured person, and does not arise on account thereof. Brown v. American-Hawaiian S. S. Co., 3 Cir., 1954, 211 F.2d 16; Crawford v. Pope & Talbot, Inc., supra; LoBue v. United States, 2 Cir., 1951, 188 F.2d 800; Slattery v. Marra Bros., Inc., 2 Cir., 1950, 186 F.2d 134; American Mutual Liability Ins. Co. v. Matthews, 2 Cir., 1950, 182 F.2d 322; Cf. Peak Drilling Co. v. Halliburton Oil Well Cementing Co., 10 Cir., 1954, 215 F.2d 368; Booth-Kelly Lumber Co. v. Southern Pac. Co., 9 Cir., 1950, 183 F.2d 902, 20 A.L.R. 2d 695.

A typical situation for the allowance of indemnity appears in Ryan Stevedoring Co. v. Pan-Atlantic Steamship Corp., supra, as the factual situation was there construed. In that case, a longshoreman who was injured as a result of improper stowage of cargo by the stevedoring contractor obtained judgment against the shipowner, whose duty to the longshoreman was non-delegable; the shipowner sought indemnity from the stevedoring contractor. Indemnity was granted on the ground that the stevedoring contractor had violated its contractual obligation to the shipowner to stow the cargo properly, which was the basis of the shipowner's liability to the injured longshoreman.

Previously, we held a stevedoring contractor liable to indemnify a shipowner where the former had contracted to furnish adequate lighting and its breach of this obligation was the basis of the shipowner's liability to an injured longshoreman. Read v. United States, supra; Crawford v. Pope & Talbot, Inc., supra. We placed the obligation to indemnify squarely on the ground that the indemnitor had agreed to perform the indemnitee's duty, which as between the indemnitee and the injured longshoreman was non-delegable; this was independent of and did not derive from the injury to the employee. Brown v. American-Hawaiian S. S. Co., supra.

The instant case presents the converse of the Ryan situation. Here, the ship-owner, Farrell, was held responsible in the district court to the injured long-shoreman because of a defective winch, i. e., unseaworthiness or a negligent failure to furnish a safe place to work. But the stevedoring contractor, Lavino, had not undertaken to perform Farrell's non-delegable duty, nor did Lavino create the defective condition. To the contrary, Farrell assumed an express obligation running to Lavino to furnish adequate winches in good order, and, as the evidence shows, to maintain and repair them.

■ Upon the analogy of the above cited decisions, it results that Lavino, had it paid its employee on account of injuries sustained, would be entitled, if this were all to the case, to be indemnified by Farrell therefor. Mowbray v. Merryweather, supra; Restatement, Contracts, Section 334. A fortiori, Farrell is not entitled to indemnity from Lavino. Thus, in American Mutual Liability Ins. Co. v. Matthews, supra, it was said:

"In the case at bar no promise by the employer can be implied that he will not use equipment furnished him by the shipowner to be used for the very purpose to which it was put. Nor can a promise be implied that he will use care to detect any defect in the equipment which patently existed when the equipment was delivered for use by the employer. To imply such a promise would mean that the employer agreed to protect the shipowner against liability arising out of the shipowner's own negligence. In the absence of an express promise, such an implication would be utterly unreasonable." 182 F.2d 322, 324.

■ Accordingly, it can only be concluded that Hagans' injury is the result, as the jury found, of Farrell's own conduct, which at once violated its duty to the longshoreman and to Lavino. As held in the Ryan decision, supra, the promisor cannot use the promisee's failure to discover and correct the promisor's own breach as a defense. See, Restatement, Restitution, Section 93, and Comment a.

Farrell, however, bases its claim to indemnity upon the asserted neglect of Lavino, first, in using the winch knowing its condition to be defective, and second, upon the conduct of the hatchman, Oliver, in signalling the draft out of the hold without making certain Hagans was no longer in its path.

Knowledge of and acquiescence in the existence of a defective appliance or condition may prevent the fruition of the right to indemnity. Restatement, Restitution, Sections 93 and 95, and Reporters' Notes. But it does not necessarily follow that the burden to indemnify is thereby created.

■ Where the parties have violated similar duties to the injured person, neither is entitled to relief against the other. Union Stock Yards Co. v. Chicago, B. & Q. R. Co., 1905, 196 U.S. 217, 25 S.Ct. 226, 49 L.Ed. 453. Absent the compensation act, and hypothesizing the legal impossibility of contribution, the independent neglect of Lavino to Hagans would qualify Lavino as a joint tort-feasor with Farrell, in which event Farrell could not recover either contribution or indemnity. Restatement, Restitution, Section 102. But, as we have already stated, Farrell's right to indemnity must arise out of the legal relationship between it and Lavino, and not out of the relationship to the employee. To this proposition we are previously committed by our decisions in the Brown and Crawford cases, supra; see also, Slattery v. Marra Bros., Inc., supra.

Here, Farrell was under a continuing responsibility to Lavino for the good order and maintenance of the winches. It fell down on the job. Indeed, it went further, for its repairman gave Lavino affirmative approval of the equipment in the presence of a ship's officer. At most, Lavino used the defective winch only a few times in the hour and a half which intervened between commencement of the use and the accident to Hagans. We see nothing in this situation which should

require Lavino to indemnify Farrell. McKay v. Pedigree Fabricks, Inc., Sup. 1947, 74 N.Y.S.2d 385; Morris v. Attula, Sup.1949, 74 N.Y.S.2d 386. Farrell's complaint that the hatchman erred in signalling the draft out of the hold before ascertaining that Hagans was out of the way does not amount to other than contributing neglect; except for the fact that the hatchman tripped on his way across the deck, he would have had adequate time to warn Hagans. Nothing in the record suggests intentional or reckless conduct on the part of Lavino which would permit the conclusion that Lavino's violation of duty toward Farrell supersedes Farrell's violation of duty toward Lavino. See Restatement, Restitution, Section 97.

Reliance by Farrell upon cases which characterize the conduct of the indemnitor as the "sole", "active" or "primary" cause, does not assist, for as stated, the indemnitor was held to have brought about the condition or defect for which the indemnitee was charged. Here, the ground upon which Farrell was held liable to Hagans was its own doing; as between Farrell and Lavino, Farrell had assumed the responsibility. If anything, Lavino only contributed to the happening of the accident. But if Lavino failed to perform its work properly, we are constrained to hold that, in the face of mutual violations, Farrell is not entitled to full indemnity, and, of course, it cannot have contribution.

We do not interpret Berti v. Compagnie de Navigation Cyprien Fabre, 2 Cir., 1954, 213 F.2d 397, as requiring a different result. The situation there was specifically identified by the court with Palazzola v. Pan Atlantic S. S. Corp., 2 Cir., 1954, 211 F.2d 277 affirmed sub nom. Ryan Stevedoring Co. v. Pan Atlantic Steamship Corp., supra, wherein the fault for which the shipowner was held responsible was the product of the stevedoring contractor's breach of contract. The factual situation in Berti is rather sparsely treated, but it appears that, as viewed by the court, the "sole" basis of the shipowner's liability to the employee was the failure of the stevedoring contractor to do its work properly; the decision was left open for determination, on retrial, of the factual issues which would resolve the relative responsibilities of the parties. The decision in United States v. Rothschild International Stevedoring Co., 9 Cir., 1950, 183 F.2d 181, was recently discussed by the court, and cited along with our decision in Read v. United States, supra, in States S. S. Co. v. Rothschild International Stevedoring Co., 9 Cir., 1953, 205 F.2d 253, 255; but see Slattery v. Marra Bros., Inc., supra, 186 F.2d at page 138. However, the factual situation here does not justify a similar result, whether it be found upon the relation of the contracting parties or their relation to the injured party.

We conclude, therefore, that Farrell is not entitled to shift to Lavino full responsibility for the loss occasioned by the payment of Hagans' judgment.

For the reasons stated, the judgment of the district court will be affirmed.

### On Petition for Rehearing.

Before BIGGS, Chief Judge, and MARIS, GOODRICH, McLAUGHLIN, KALODNER, STALEY and HASTIE, Circuit Judges.

### PER CURIAM.

A petition for rehearing has been filed by the appellant in this case. Since the judges who concurred in the judgment entered on July 10, 1956, do not desire rehearing and a majority of the circuit judges of the circuit do not think it appropriate to order rehearing before the court en banc, the petition for rehearing will be denied.

BIGGS, Chief Judge, and MARIS, Circuit Judge (dissenting).

It would appear that the decision of this court unduly limits the scope of the decision of the Supreme Court in Ryan Stevedoring Co. v. Pan-Atlantic S. S. Corp., 1956, 350 U.S. 124, 76 S.Ct. 232. The decision also seems to us to be in conflict with American President Line, Ltd., v. Marine Terminal Corp., 9 Cir.,

1956, 234 F.2d 753. Cf. United States v. Rothschild International Steve. Co., 9 Cir., 1950, 183 F.2d 181. For these reasons we think that the appeal should be reheard before the court en banc.