Joseph **OLESZCUK**, Plaintiff,

v.

**CALMAR STEAMSHIP CORPORATION,**
Defendant and Third Party Plaintiff
(**NACIREMA OPERATING COMPANY,**
Third Party Defendant).

**Civ. No. 9179.**

United States District Court
D. Maryland.
Aug. 14, 1958.

See also 163 F.Supp. 370.

John J. O'Connor, Jr., Baltimore, Md., for plaintiff.

Lord, Whip & Coughlan, George W. P. Whip and Robert E. Coughlan, Jr., Baltimore, Md., for Calmar S.S. Corp.

Piper & Marbury, Jesse Slingluff, Jr., and Mathias J. DeVito, Baltimore, Md., for Nacirema Operating Co., Inc.

THOMSEN, Chief Judge.

Plaintiff, a longshoreman employed by third party defendant Nacirema, a stevedoring contractor, was injured while working in the hold of the S.S. Portmar when he was struck by one of the ship's cargo lights, which had been thrown over the side of the hold by Nacirema's deckman, and had pulled loose from its supporting cable. Plaintiff obtained a judgment for $35,000 against defendant Calmar, owner and operator of the S. S. Portmar, and Calmar now seeks indemnity from Nacirema under principles enunciated in Ryan Stevedoring Co. v. Pan-Atlantic Steamship Corp., 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133, and Weyerhaeuser S.S. Co. v. Nacirema Operating Co., 355 U.S. 563, 78 S.Ct. 438, 2 L.Ed.2d 491.

At the trial of plaintiff's action written questions were submitted to a jury. Those which are relevant to the issue now before the court, together with the jury's answers thereto, are as follows:

"1. Under all the facts of this case, was the S.S. Portmar, at the time and place of the injury complained of, unseaworthy in respect to the cargo light?—Yes.

"2. If you find such unseaworthiness, was such unseaworthiness a proximate cause of the injuries sustained by the plaintiff?—Yes.

"3. Under all the facts of this case, was the Calmar Steamship Corporation, or any member of the crew of the S. S. Portmar, negligent in respect to the cargo light?—Yes.

"4. If you find such negligence, was such negligence a proximate cause of the injury sustained by the plaintiff?—Yes.

"5. Did any negligence of the plaintiff proximately cause or contribute to the injury of which he complains?—No.

\*   \*   \*   \*   \*   \*

"9. Was the cargo light lowered in a negligent manner?—Yes.

"10. If the answer to question 9 is 'Yes', (a) was the manner in which the cargo light was lowered the sole proximate cause of the accident, or (b) was the manner in which the cargo light was lowered a proximate cause of the accident?— (a) No. (b) Yes.

"11. Were the stevedores negligent in using a cargo light that was not seized?—Yes."

The parties have now submitted to the court without a jury the question whether Calmar is entitled to indemnity from Nacirema, with the understanding that the court may consider all the evidence offered at the first trial and at the hearing on Calmar's motion for judgment against Nacirema, but shall be bound

by the findings of the jury, so far as they go. The principal question for decision is whether Calmar's claim for indemnity is barred by its own failure to supply a reasonably safe and serviceable light.

The contract between the operator (Calmar) and the stevedoring contractor (Nacirema) provided: "The Operator will supply booms, adequate winches in good working order and with sufficient steam for their efficient operation, blocks, topping lifts, guys, wire falls of sufficient length and strength, *lights for night work*, derricks * * *." (italics supplied).

Two types of lights which can be lowered into a hold are in common use: (1) cluster lights, having several bulbs under a single reflector, and (2) a new type, referred to herein as "cargo lights", having a single bulb screwed into a large bell-shaped metal reflector, with a metal handle attached to the top. The cable passes through a small circular opening at the very top of the reflector, and the copper wires are supposed to be securely attached to the terminal screws. When so attached they will support the weight of the light in ordinary use, but it is customary for the ship's crew to "seize" cargo lights, i. e. to tape or tie the cable to the handle in order to relieve the strain and to reduce the chance of the light falling loose from the cable. Cluster lights need not be seized. If, contrary to custom, a ship supplies a cargo light which has not been seized, the longshoremen may call the matter to the attention of the officer on duty, so that he may have the light seized by the crew, or the longshoremen may perform the operation themselves.

Calmar supplied a light for each hold. The light supplied for the hold in which plaintiff was working was a new cargo light, which had not been seized. Nacirema's deckman not only accepted and used the unseized light, but threw it over the side of the hold so roughly that the light was jerked off the cable and fell into the hold, injuring plaintiff.

The jury found that the ship was unseaworthy in respect to the cargo light, and that Calmar was negligent in respect thereto. Under the charge, the jury may have based such finding on Calmar's failure to have the cargo light seized, or on its failure to have the light equipped with a lanyard, or on its failure to inspect the light to determine whether the wires were securely attached to the terminal screws. Of course, the contractual duty which Calmar owed Nacirema to supply a serviceable light was not identical with the duty Calmar owed plaintiff to furnish him with a reasonably safe place in which to work; but I find as a fact, for the purposes of this motion, that Calmar breached its contractual duty to Nacirema to supply a reasonably safe and serviceable light. If the responsible officers of the ship did not cause the light to be seized, they should have supplied a lanyard or should have seen that the wires were securely attached to the terminal screws.

The jury also found that the stevedores were negligent in using a cargo light that was not seized. Moreover, the jury found that the cargo light was lowered by Nacirema's deckman in a negligent manner, and that although the manner in which the light was lowered was *a* proximate cause of the accident it was not *the sole* proximate cause of the accident. The jury found that Calmar's negligence in respect to the light was also *a* proximate cause of the accident. Those findings are binding on me at this time.

After many cases in the various circuits and in the Supreme Court, certain principles seem to have been established.

■ Where both the shipowner and the stevedoring contractor are guilty of negligence proximately causing an injury to a longshoreman employed by the contractor, the shipowner may not obtain contribution from the contractor-employer as a joint tortfeasor. Halcyon

**632**

Lines v. Haenn Ship Ceiling & Refitting Corp., 342 U.S. 282, 72 S.Ct. 277, 96 L.Ed. 318. See also Pope & Talbot v. Hawn, 346 U.S. 406, 74 S.Ct. 202, 98 L.Ed. 143.

Claims for indemnity by the shipowner against the contractor-employer have in the past been based either (a) on a comparison of fault as between the shipowner and the employer, or (b) on a duty arising from some relationship between them, usually contractual.

■ Although the Supreme Court has not flatly passed on the question, the better reasoned cases in the circuits hold that sec. 5 of the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C.A. § 905, bars the claim of the shipowner against the contractor-employer for indemnity based upon differences in the degree of fault, i.e. the familiar tort principles of "active" and "passive" or "primary" and "secondary" negligence. See Weinstock, The Employers' Duty to Indemnify Shipowners for Damages Recovered by Harbor Workers, 103 U. of Pa.L.Rev. 321, 332–346 (1954), cited generally by the Supreme Court in Weyerhaeuser; American Mutual Liability Ins. Co. v. Matthews, 2 Cir., 182 F.2d 322, 323–324; Slattery v. Marra Bros., 2 Cir., 186 F.2d 134, 139; Crawford v. Pope & Talbot, Inc., 3 Cir., 206 F.2d 784, 792; Brown v. American-Hawaiian S.S. Co., 3 Cir., 211 F.2d 16, 18. Cf. United States v. Rothschild International Steve. Co., 9 Cir., 183 F.2d 181. Following what I believe to be the weight of authority and the better reasoned cases, I hold that Calmar may not recover indemnity from Nacirema upon ordinary tort principles, but that any claim it may have must be based upon the contractual relationship between them.

■ Sec. 5 of the Act does not bar a claim for indemnity by a shipowner against a contractor-employer where the claim is based upon an express or implied contractual obligation of the contractor to the shipowner, since such a right to indemnity is independent of the duty owed by the contractor to the injured longshoreman, and does not arise on account thereof. Ryan Stevedoring Co. v. Pan-Atlantic Steamship Corp.; Weyerhaeuser S.S. Co. v. Nacirema Operating Co. Such a claim need not be based upon an express agreement to indemnify. An agreement to perform stevedoring services carries with it the implied undertaking that the contractor will perform his task with due care and ordinary skill.

The contract between the operator (Calmar) and the contractor (Nacirema) obligated the contractor "to supply all necessary stevedoring labor" and "all stevedoring direction and supervision requisite or necessary for the proper and efficient conduct and control of the work". Similar language was held by the Supreme Court in Ryan and in Weyerhaeuser to constitute "a contractual undertaking to [perform] 'with reasonable safety'" and to discharge "foreseeable damages resulting to the shipowner from the contractor's improper performance." 350 U.S. at pages 129, note 3, 130, 76 S. Ct. at page 235; 355 U.S. at page 565, 78 S.Ct. at page 440.

■ Counsel for Nacirema contend, however, that no such implied obligation to indemnify can arise in this case because the contract also contains a clause headed "Responsibility of the Parties", which reads as follows: "All stevedoring work and supervision, and all other services of the Contractor, under the contract will be under the sole direction and control of the Contractor, provided, however, that the Operator and the master or officer in charge of the ship will always have the right to reject the work if, in the opinion of the master or officer in charge of the ship, cargo is so stowed or secured as to make the ship unseaworthy or unfit for her contemplated voyage, or as to subject the crew or any of the cargo to unnecessary risk or danger. The Contractor will be responsible for loss or damage to the ship, its equipment and the cargo, through or as a result of negligence." Counsel for Nacirema argue that the rule *expressio unius est exclusio alterius* applies, particularly since the contract was prepared by Calmar, and

that the foregoing paragraph limits Nacirema's contractual liability to the items specifically assumed by it. That question must be decided under maritime law and not under the law of the state where the contract was made. A/S J. Ludwig Mowinckels Rederi v. Commercial Stevedoring Co., 2 Cir., 256 F.2d 227. It does not appear from the opinions or from the transcript of record in Weyerhaeuser, or from the opinions in Ryan, whether or not a similar clause was included in the contracts involved in those cases. I conclude, from an examination of the entire contract in the instant case, that the quoted clause was not intended to eliminate the implied obligation of the contractor to indemnify the operator against "foreseeable damages resulting to the shipowner [operator] from the contractor's improper performance."

Nor is the contractor's implied obligation eliminated by the provision which required it "to carry and include in the rates herein specified, Workmen's Compensation Insurance for the unlimited protection of its employees under State and Federal Laws, also Public Liability Insurance for the protection of third parties injured by its employees." I cannot tell whether a similar clause was included in the Ryan and Weyerhaeuser contracts but it may well have been, and no one considered it worthy of mention.

■ The obligation of a stevedoring contractor relates not only to the handling of cargo, but also to the use of equipment incidental thereto. Ryan Stevedoring Co. v. Pan-Atlantic Steamship Corp.; Weyerhaeuser S.S. Co. v. Nacirema Operating Co.; American President Lines v. Marine Terminals Corp., 9 Cir., 234 F.2d 753, certiorari denied 352 U.S. 926, 77 S.Ct. 222, 1 L.Ed. 2d 161. If in that regard the stevedoring contractor renders a substandard performance which foreseeably leads to the shipowner's liability for damages to a longshoreman, the shipowner is entitled to indemnity "absent conduct on its part sufficient to preclude recovery".

355 U.S. at page 567, 78 S.Ct. at page 441.

■ Just what conduct on the part of the shipowner will be sufficient to preclude recovery has not been specified by the Supreme Court; but it has pointed out that "in the area of contractual indemnity an application of the theories of 'active' or 'passive' as well as 'primary' or 'secondary' negligence is inappropriate." 355 U.S. at page 569, 78 S.Ct. at page 442. It seems clear, however, that since the contractor's liability to the shipowner is of a purely contractual nature, it can be defeated only if the shipowner has breached a contractual duty owed by it to the contractor. See Revel v. American Export Lines, Inc., D.C.E.D. Va., 162 F.Supp. 279, Hoffman, J.

■ The verdict of the jury in the instant case has established that by supplying an unsafe light Calmar breached the non-delegable duty which it owed Oleszcuk, the longshoreman, to provide him with a safe place in which to work. Of course, every breach of a non-delegable duty owed by a shipowner to a longshoreman does not automatically constitute the breach of a duty owed by the shipowner to the stevedoring contractor. For example, it is generally recognized that a shipowner's failure to inspect, discover and correct an unsafe condition created by the contractor, does not ordinarily defeat the shipowner's right to be reimbursed by the contractor. Weyerhaeuser S.S. Co. v. Nacirema Operating Co., 355 U.S. at page 568, 78 S.Ct. at page 441; Cornec v. Baltimore & Ohio R. Co., 4 Cir., 48 F.2d 497, 502, certiorari denied 284 U.S. 621, 52 S.Ct. 9, 76 L.Ed. 530. In the instant case, however, the operator of the vessel, Calmar, did violate a contractual duty owed by it to the stevedoring contractor. The contract specifically required the operator to supply lights for night work, and it was obligated to supply lights which were reasonably safe. This the operator, Calmar, failed to do.

The following statement from American Mutual Liability Ins. Co. v. Mat-

thews, 2 Cir., 182 F.2d 322, is directly in point: "In the case at bar no promise by the employer can be implied that he will not use equipment furnished him by the shipowner to be used for the very purpose to which it was put. Nor can a promise be implied that he will use care to detect any defect in the equipment which patently existed when the equipment was delivered for use by the employer. To imply such a promise would mean that the employer agreed to protect the shipowner against liability arising out of the shipowner's own negligence. In the absence of an express promise, such an implication would be utterly unreasonable." 182 F.2d at page 324. See also Hagans v. Farrell Lines, 3 Cir., 237 F.2d 477, 482.

The cases relied on by Calmar are distinguishable. In United States v. Arrow Stevedoring Co., 175 F.2d 329, rehearing denied 175 F.2d 333, certiorari denied 338 U.S. 904, 70 S.Ct. 307, 94 L.Ed. 557, cited by the Supreme Court in Weyerhaeuser, the Ninth Circuit held that the *sole* proximate cause of the injury was the negligence of the stevedoring company in working its men in the known dangerous condition there existing, specifically in its use of a door with knowledge of its defects of dogs and pins. The court held that the government (shipowner or operator) in no way participated in the wrongful use of the door. In American President Lines v. Marine Terminals Corp., 9 Cir., 234 F.2d 753, 754, the court found that the shipowner had informed the stevedoring contractor that some of the strongback beams were defective and had requested the contractor to remove the beams. The Ninth Circuit held that the contractor had a specific duty to remove such beams, and that its failure to do so constituted a breach of its implied contractual duty to do its work in a safe and workmanlike manner and "was the sole active or primary conduct causing the injury". The Supreme Court has now pointed out "that in the area of contractual indemnity an application of the theories of 'active' or 'passive' as well as 'primary' or 'second-

ary' negligence is inappropriate". 355 U.S. at page 569, 78 S.Ct. at page 442. United States v. Rothschild International Steve. Co. is also distinguishable on the same grounds as Arrow and American President.

The reasoning of the Second Circuit in American Mutual Liability Ins. Co. v. Matthews, supra, is in accord with the principle stated in Ryan. "Whatever may have been the respective obligations of the stevedoring contractor and of the shipowner to the injured longshoreman for proper stowage of the cargo, it is clear that, as between themselves, the contractor, as the warrantor of its own services, cannot use the shipowner's failure to discover and correct the contractor's own breach of warranty as a defense. Respondent's failure to discover and correct petitioner's own breach of contract cannot here excuse that breach." 350 U.S. at pages 134, 135, 76 S.Ct. at page 238.

Like Hagans v. Farrell Lines, supra, "the instant case presents the converse of the Ryan situation". 237 F.2d at page 482. Ryan does not hold that if the shipowner or operator is itself guilty of a breach of contract proximately causing the damage, it is still entitled to indemnity from the contractor. The test of liability is to be found in the reciprocal contractual duties between the stevedoring contractor and its customer, the shipowner or operator.

In the instant case, the jury has found that the operator, Calmar, was negligent in respect to the cargo light and that the contractor, Nacirema, was negligent in using the unseized light as well as in the manner in which it lowered the light into the hold. The jury further found that both the negligence of Calmar and the negligence of Nacirema were proximate causes of the accident, and that the negligence of Nacirema was not the sole proximate cause of the accident. I am bound by those findings at this time. Moreover, I have found and concluded that Calmar breached its contractual duty to Nacirema to supply a reasonably safe light, and that Nacirema breached

its contractual duty to Calmar by the manner in which it used the light. Both breaches proximately contributed to the injury and damage to Oleszcuk for which Calmar has been held liable. Under those circumstances, Calmar is not entitled to indemnity from Nacirema under any theory.