## BROOKER ENGINEERING CO. v. GRAND RIVER DAM AUTHORITY.

### No. 2888.

Circuit Court of Appeals, Tenth Circuit.

Aug. 30, 1944.

W. E. Green, of Tulsa, Okl. (Green & Farmer, of Tulsa, Okl., and Kellogg, Fulton & Donovan, of Detroit, Mich., on the brief), for appellant.

Edward P. Marshall, of Tulsa, Okl. (R. L. Davidson, of Tulsa, Okl., on the brief), for appellee.

Before PHILLIPS, BRATTON, and MURRAH, Circuit Judges.

BRATTON, Circuit Judge.

Grand River Authority was created by Article 4, Chapter 70, Laws of Oklahoma 1935, 82 O.S.1941 §§ 861–881, with broad powers to control, preserve, and distribute the water of the Grand River and its tributaries, and to develop water power and electric energy. The Authority initiated a comprehensive program of development, and to that end entered into separate contracts for different parts of it. Contract 7 was with Massman Construction Company. It was for the construction of a dam across the river, and a power house. That was the principal contract, Massman was the principal contractor, and under the terms of the contract the work was to be completed not later than January 26, 1940. Contract 12 was with Brooker Engineering Company. It provided that the Engineering Company should install an electric generator, switchboard, transformers, and other equipment for operation of the power plant at the dam. By its terms, the work was to be completed not later than January 16, 1940, and it provided for payment of five hundred dollars per day as liquidated damages for each day of default in completing the work. The work was not completed until November, 1940, about ten months after the time fixed in the contract, but the contract price was paid in full, and no attempt was made to assess liquidated damages for the delay.

The Engineering Company instituted this action against the Authority and Massman to recover damages. The essence of the cause of action pleaded was that the work to be performed by the Engineering Company under its contract was dependent for its rate of progress upon prior construction of the concrete structures of the dam, the power house, the generators, and certain other miscellaneous items; that construction of such structures, power house, generators, and other miscellaneous items fell behind schedule; that the Authority failed to maintain or require a rate of progress on the project which would permit the Engineering Company to complete its work within the time fixed in its contract; and that as the result of the delay, the Engineering Company was subjected to increased cost of labor, additional expense, cost of certain replacements, and other outlays. The Authority interposed a motion for summary judgment. An affidavit and certain other exhibits were attached to it. The Engineering Company filed a response. Affidavits and other exhibits were attached to it. The court sustained the motion and entered judgment for the Authority. The Engineering Company appealed.

It is urged that the trial court erred in holding that there was no implied obligation on the Authority to complete or require the completion of the dam at a rate sufficient to enable the Engineering Company to complete its work within the time fixed in the contract. The argument is that the Authority was under an implied covenant to keep the project in a state of forwardness which would make it possible for the Engineering Company to complete its work within the time specified in the

contract; that the Authority failed to keep the project in such state of forwardness; and that as the result of the breach, the Engineering Company sustained the damages for which recovery was sought. The contract fails to contain a provision placing such an obligation on the Authority. But the meaning of a contract is to be gathered from a consideration of all its provisions, and the inferences reasonably derivable from them, as to the intent and object of the parties. No particular words are requisite to the creation of an obligation to do or forbear from doing a particular act or thing. If from the language used, and the inferences reasonably drawn from it, there is a manifested intention that one of the parties shall do or refrain from doing a certain act, the obligation will be implied. Once the intention of the contracting parties is clearly ascertained from the contract, and the circumstances under which it was entered into, the contract will be construed to include not only the obligations set forth in express words, but also such implied obligations as are indispensable to effectuate the intention of the parties. Sacramento Navigation Co. v. Salz, 273 U.S. 326, 47 S.Ct. 368, 71 L.Ed. 663; New York Casualty Co. v. Sinclair Refining Co., 10 Cir., 108 F.2d 65; Watson Brothers Transportation Co. v. Jaffa, 8 Cir., 143 F.2d 340.

It may be conceded, without deciding, that where the owner of property initiates a program of construction or development and awards separate contracts to different contractors for integrated parts of it, and the contracts together with the attending circumstances fail to indicate that the parties contemplate otherwise, the owner is impliedly obligated to keep the work in such state of forwardness as will permit a given contractor to complete the work under his contract within the time fixed. Stehlin-Miller-Henes Co. v. City of Bridgeport, 97 Conn. 657, 117 A. 811; Byrne v. Bellingham Consolidated School District, 7 Wash. 2d 20, 108 P. 2d 791. But the facts do not bring this case within that rule.

■ Here the principal contract with Massman had been entered into and was in the course of performance at the time of the execution of the contract with the Engineering Company. The principal contract recognized probable delays on the part of the Authority in acquiring the necessary lands and rights-of-way for construction purposes, and provided that no claim for damages for such delays should be allowed; authorized the Authority to increase or diminish quantities of work to be done and materials to be furnished if deemed reasonably necessary or desirable to complete the work contemplated; empowered the engineers of the Authority to make reasonable changes in the line, grade, form, position, plan, dimensions, or material of the work; and provided for an extension of time for completion of the work to absorb any delay in consequence of any act or omission of the Authority. The notice to bidders under Contract 12 made specific reference to the dominant contract, stated that the dam and power house were being constructed under it, and stated that drawings for it were available for inspection and study of bidders. The specifications accompanying the contract contained a provision that the contractor must arrange the work, and the time of doing it, to correlate his operations with the operations under other contracts in such manner as not to delay other contractors. The contract provided that differences or conflicts which might arise between the Engineering Company and other contractors in regard to their work, or in respect to a desire to use the same space or area for working at the same time, should be adjusted and determined by the engineers of the Authority. And it contained the further provision that in the computation of the time actually taken to complete the work, the length of time during which the work was delayed in consequence of any acts or omissions of the Authority, or any acts or omissions of the contractors under Contracts 5, 6, or 7, should be allowed to the Engineering Company and excluded from the computation. It is clear that the parties contemplated from the outset the probability that there might be delay, and that the work might not be finished at precisely the time named in the contract. And since they contemplated the probability of delay, there is no warrant for the conclusion that the Authority bore an implied obligation or covenant to require that the work on the dam proceed at a rate of forwardness sufficient to enable the Engineering Company to complete its contract within the time specified, on pain of liability in damages. H. E. Crook Company, Inc. v. United States, 270 U.S. 4, 46 S. Ct. 184, 70 L.Ed. 438; United States v. Rice, 317 U.S. 61, 63 S.Ct. 120, 87 L. Ed. 53.

The judgment is affirmed.