**GOLDEN VALLEY ELECTRIC ASSOCIA-
TION, INC., Appellant,**

v.

**CITY ELECTRIC SERVICE, INC.,**
Appellee.

No. 1580.

Supreme Court of Alaska.

Jan. 21, 1974.

Thomas E. Fenton of Call, Haycraft & Fenton, Fairbanks, for appellant.

No appearance for appellee.

Before RABINOWITZ, C. J., and CONNOR, ERWIN, BOOCHEVER and FITZGERALD, JJ.

## OPINION

BOOCHEVER, Justice.

In October of 1967, City Electric contracted to supply to Golden Valley all labor and equipment necessary to convert Golden Valley's electric transmission system from single phase to three phase. Robert A. Smith, an employee of City Electric, was injured when he fell from a power pole owned by Golden Valley. Smith recovered workmen's compensation benefits from City Electric and brought suit against Golden Valley alleging that Golden Valley was negligent in installing the pole and that the negligence proximately caused his injuries. Golden Valley brought a third-party complaint against City Electric alleging that City Electric's negligence was the proximate cause of Smith's injuries, that City Electric thereby breached its duty to perform its contract with Golden Valley in a workmanlike manner, and that Golden Valley was entitled to be indemnified by City Electric for any liability it owed Smith.

City Electric moved for judgment on the pleadings. The superior court judge dismissed the third-party complaint and granted judgment for City Electric because he concluded that the payment of workmen's compensation benefits to Smith marked the outer limit of City Electric's liability. This appeal followed. City Electric has made no appearance before this court.

We are asked to decide if AS 23.30.055,[1] which on its face limits the employer's liability to that imposed through workmen's compensation, precludes a third party, found liable in tort to an injured workman, from recovering indemnity from the workman's employer.[2]

Golden Valley concedes that the exclusive remedy provision precludes the employee or persons claiming through him from recovering damages other than workmen's compensation benefits from the employer. However, it argues that the provision does not bar a third party, found liable in tort to the employee, from recovering indemnity from the employer where the employer's fault also contributed to the accident. The opposing argument raised by City Electric at the trial level was that "the allowance of such recovery over accomplishes indirectly what cannot be done directly and, therefore, evades the spirit of the legislation."[3]

■ We need not decide here whether the exclusive remedy provision bars all actions by third parties against employers where the third party has been held liable to the employee for injuries resulting from a work-related incident for which compensation has been paid.[4] Because the claim of Golden Valley cannot be predicated upon any express covenant, nor upon any statute authorizing indemnity or contribu-

---

1. AS 23.30.055 provides in pertinent part:
 The liability of an employer prescribed in § 45 of this chapter is exclusive and in place of all other liability of the employer and any fellow employee to the employee, his legal representative, husband or wife, parents, dependents, next of kin, and anyone otherwise entitled to recover damages from the employer or fellow employee at law or in admiralty on account of the injury or death.

2. See 2 A. Larson, Workmen's Compensation § 76.10, at 227 (1970):
 Perhaps the most evenly-balanced controversy in all of compensation law is the question whether a third party in an action by the employee can get contribution or indemnity from the employer, when the employer's negligence has caused or contributed to the injury. (footnote omitted).

3. Larson, Workmen's Compensation: Third Party's Action Over Against Employer, 65 Nw.U.L.Rev. 351, 419 (1970).

4. See, e. g., 2 A. Larson, Workmen's Compensation § 76.41 at 250.12 ff. (1970). Compare American Dist. Tel. Co. v. Kittleson, 179 F.2d 946, 953–955 (8th Cir. 1950) (interpreting Iowa law) with 2 A. Larson, Workmen's Compensation § 76.44 at 250.78 ff. (1970), and cases there cited. See also Northwest Airlines, Inc. v. Alaska Airlines, Inc., 343 F.Supp. 826, 828–829 (D.Alaska 1972).

tion, recovery may be had only by implying a covenant of indemnity in the contract between the parties. We hold that the judgment of the superior court was correct because as a matter of the common law of contracts, no covenant of indemnity should be implied in the agreement between these parties. We base our holding upon the policy underlying the exclusive remedy statute, the ability of the parties who have entered into a written contract to allocate risk expressly where they are on notice of the exclusive remedy provision of the Workmen's Compensation Act, and the dismal experience of the federal courts with a rule similar to that suggested by Golden Valley where the Longshoremen's and Harbor Workers' Compensation Act and admiralty law provided simultaneous recoveries.

 It should be noted at the outset that each Alaskan employer may, as a matter of law, be presumed to have sufficient knowledge of the provisions of the Alaska Workmen's Compensation Act to be aware that the Act contains a provision whereby the employer's liability prescribed by the Act "is exclusive and in place of all other liability of the employer and any fellow employee to the employee . . . and anyone otherwise entitled to recover damages from the employer . . . on account of [the employee's] injury or death." [5] We take judicial notice of the fact that Golden Valley owns extensive property interests, employs numerous employees and engages in frequent and substantial contracts. If such an enterprise wishes to alter the exclusive remedy provision of the Alaska Workmen's Compensation Act so as to require an employer contracting with it to indemnify Golden Valley against the tort claims of the employer's servants, it is not onerous to require that Golden Valley expressly so provide in the contract.

 Courts will imply a contract term in order to conform an agreement to the evident intent of the parties.[6] Since the parties here were chargeable with knowledge of the exclusive remedy provision of the Alaska Workmen's Compensation Act, it is illogical to conclude that indemnification of Golden Valley by City Electric was in the contemplation 'of the parties all along. Furthermore, such an interpretation of contracts between employers and third parties effectively nullifies one intended effect of the statute—the establishment of an acceptable, ascertainable and reliable limit to liability. To that extent, Golden Valley asks us to ignore the intention of the legislature.

While there is some prior state authority for implying a contract of indemnity under these circumstances,[7] the great impetus toward forging a remedy for a third party by means of an implied contract of indemnity arose out of federal admiralty law. Initially the United States Supreme Court, anchoring its opinion on maritime principles, authorized recovery by a longshoreman from a ship owner under the doctrine of unseaworthiness, a strict liability theory not dependent upon negligence.[8] In the leading case, Ryan Stevedoring Co. v. Pan-Atlantic Steamship Corp., 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133 (1956), a longshoreman injured when improperly-stored cargo collapsed on him recovered from the ship owner on the grounds that the vessel was unseaworthy and the owner was negligent in failing to discover the negligent storage. The ship owner sought indemnity from the longshoreman's employer, the stevedoring company which had negligently loaded the ship. The court

---

5. AS 23.30.055.

6. Stern v. Dunlap Co., 228 F.2d 939 (10th Cir. 1955); Brooker Engineering Co. v. Grand River Dam Authority, 144 F.2d 708 (10th Cir. 1944); Stern & Co. v. State Loan & Finance Corp., 238 F.Supp. 901 (D.Del. 1965).

7. Westchester Lighting Co. v. Westchester County Small Estates Corp., 278 N.Y. 175, 15 N.E.2d 567 (1938).

8. Seas Shipping Co. v. Sieracki, 328 U.S. 85, 66 S.Ct. 58, 90 L.Ed. 1099 (1946).

found two implied-in-fact terms in the contract between the stevedoring company and the ship owner. The first was an implied warranty that service would be performed in a safe and workmanlike manner. The second was an implied agreement by the stevedore to indemnify the ship owner for any damages sustained by the latter because of the stevedore's breach of his duty to perform the work safely.

In the maritime context, where a ship owner could be held liable without fault for an injury attributable solely to the negligence of a contracting stevedoring company, implying indemnification of the ship owner perhaps leads to a justifiable result. Yet even in admiralty cases this strained application of contract principles to avoid tort liability on the part of the ship owner resulted in a proliferation of litigation involving abstruse reasoning and fine distinctions dependent upon slight variations in the particular facts of each case. This situation culminated in a 1972 amendment to the Longshoremen's and Harbor Workers' Compensation Act whereby the liability of a ship owner to a longshoreman for unseaworthiness was abolished by Congress, as was a ship owner's liability for injuries caused by the negligence of persons engaged in stevedoring service on the vessel.[9] In explaining the reason for the amendment, the House Report[10] indicated that the extensive litigation generated by *Sieracki* and *Ryan* and their progeny had occasioned substantial expenditures "which could better be utilized to pay improved compensation benefits [rather than] to defray litigation costs."[11] The impact of repetitive and protracted litigation upon the courts was also considered. Congress determined that it would be fairer to all concerned, and fully consistent with the objective of protecting the health and safety of employees who work on board vessels, to predicate the liability of vessel owners upon negligence principles, thereby placing ship owners in the same position with respect to third-party liability as land-based third parties in non-maritime pursuits. The Report concluded that:

> the doctrine of the *Ryan* case, which permits the vessel to recover the damages for which it is liable to an injured worker where it can show that the stevedore breaches an express or implied warranty of workmanlike performance is no longer appropriate if the vessel's liability is no longer to be absolute, as it essentially is under the seaworthiness doctrine. Since the vessel's liability is to be based on its own negligence, and the vessel will no longer be liable under the seaworthiness doctrine for injuries which are really the fault of the stevedore, there is no longer any necessity for permitting the vessel to recover the damages for which it is liable to the injured worker from the stevedore or other employer of the worker.[12]

By analogy, Golden Valley may be held liable only upon establishment of its negligence, and there is no need for a judicially implied contract of indemnity. There is thus no reason for this court to become lost in the labyrinth created by contorting contract law to imply an indemnity agreement when the parties are perfectly free to express their own intentions.

We are further influenced by the complexities that would be involved in attempting to instruct juries under the rule suggested by Golden Valley and the Justices dissenting from this opinion. The courts could well find it necessary to instruct as to the relative ability of the parties to prevent the injury, distinguishing between the company creating the dangerous condition and the one failing to discover it.[13] Fed-

9. Act of Oct. 27, 1972, Pub.L.No.92–576, § 18(a), 86 Stat. 1251, 1263, amending 33 U.S.C. § 905 (1970).

10. H.R.Rep.No.92–1441, 92nd Cong., 2nd Sess., 1972 U.S.Code Cong. & Admin.News p. 4698.

11. *Id.* at 4702, n. dd.

12. *Id.* at 4704.

13. *See* Italia Societa v. Oregon Stevedoring Co., 376 U.S. 315, 321–324, 84 S.Ct. 748, 11 L.Ed.2d 732, 739–740 (1964), where the

eral courts have found it necessary to instruct on such niceties as whether the third party created a dangerous condition and the employer merely failed to discover it, whether the third party created a dangerous condition and the employer discovered it but continued work, or whether the third party created a dangerous condition which was latent and the employer activated it by his own affirmative conduct.[14] Even with these further guidelines, our dissenting Justices recognize that under certain circumstances, cases may arise which call for instructions distinguishing between different degrees of relative negligence.[15]

Where parties chargeable with knowledge of the exclusive remedy provision of the Alaska Workmen's Compensation Act have entered into a service contract, they should be required to set forth expressly any agreement by which they intend to increase an employer's liability beyond the limits dictated by the workmen's compensation statute. There does not appear to be any valid reason for this court to author contractual terms for the parties when, in the absence of an express agreement to the contrary, they may be presumed to have relied on the statutory exclusive remedy provision. Where an employee is injured through the negligence of a third party who is not in a contractual relationship with his employer, the vast majority of cases hold that the third party cannot recover indemnity from the employer.[16] When the parties have entered into a contract and thus had the opportunity to provide for the manner in which losses are to be distributed, there is less reason for the courts to allocate liability.

Because we hold that the policies underlying AS 23.30.055 and the application of ordinary rules of the law of contracts cannot justify the implication of an indemnity covenant, we affirm the judgment of the superior court.

Affirmed.

ERWIN, Justice, with whom FITZGERALD, Justice, joins, dissenting.

I dissent from the views expressed by the majority because they assume a degree of sophistication between contracting parties that is the exception rather than the rule. While, undoubtedly, the contracting parties could protect themselves by written contractual provisions and by contractual liability insurance, the vast majority of people will not do so for the vast majority of transactions are not so formal because of trust, haste or ignorance.

Therefore, a better rule for the protection of all persons affected by the contract which also places the emphasis on the quality of performance, would be to permit indemnity for breach of implied warranty of workmanlike performance. This would insure that the basic liability would be on the person responsible for performance and would protect all contracting parties, not just the prudent or the sophisticated.

An analysis of the legal authorities in this area reveals substantial support for such a rule, and examination of this authority reveals the development of the implied indemnity theory.

Alaska's exclusive remedy provision is the same as or similar to those found in many jurisdictions.[1] If viewed in a vacu-

---

United States Supreme Court acknowledges that simple tort analysis—comparative negligence—cannot properly be employed to determine the allocation of payments; Weyerhaeuser Steam Ship Co. v. Nacirema Operating Co., 355 U.S. 563, 569, 78 S.Ct. 438, 2 L.Ed.2d 491, 495 (1958).

14. See 2 A. Larson, Workmen's Compensation § 76.43(a) at 250.44–250.49 (1970).

15. See Id. at 250.56.

16. Id. § 76.44 at 250.78. We, of course, are not required in this case to pass upon the question of whether there may be recovery by a third party from an employer in the absence of a contractual relationship.

1. Professor Larson has stated that the language of the New York Compensation Act

um the language would tend to support appellee's position that an employer is covered on almost any claim made by his employee.[2] However, most courts have now taken a somewhat more liberal interpretation of the standard exclusive remedy provision. The sections are generally interpreted to limit actions by the employee against his employer for damages caused by his injury; however,

> a third party's action for indemnity is not exactly for "damages" but for reimbursement, and is not "on account of" the employee's injury, but on account of breach of an independent duty owed by the employer to the third party.[3]

We note initially that Golden Valley's action against City Electric is based on a breach of contract theory and not on a tort-type recovery against the employer under a contribution statute.[4] Also, this is not a case where there was no express contract of indemnity between the parties,[5] but rather one where there is a contract between the parties and we are asked to imply a promise of indemnity.

Those cases allowing recovery when there is a contract but no express indemnity provision have done so by distinguishing between recovery based in tort and in contract. The leading case, Ryan Stevedoring Co. v. Pan-Atlantic Steamship Corp.,[6] and many of the subsequent cases grow out of the triangular relationship between an injured longshoreman-employee, the stevedore-employer and the contracting ship-

---

is standard. Larson, Workmen's Compensation: Third Party's Action Over Against Employer, 65 Nw.U.L.Rev. 351, 368 (1970). It reads:

> The liability of an employer prescribed by the last preceding section shall be exclusive and in place of any other liability whatsoever, to such employee, his personal representatives, husband, parents, dependents or next of kin, or anyone otherwise entitled to recover damages, at common law or otherwise on account of such injury or death . . . .

N.Y. Workmen's Compensation Law § 11 (McKinney's Consol.Laws c. 67, 1965); Longshoremen's and Harbor Workers' Compensation Act, § 5, 33 U.S.C. § 905 (1970), as amended, 33 U.S.C. § 905(a) (Supp.1973). *See generally* 2 A. Larson, Workmen's Compensation § 76.30 (1970).

2. Some district court judges have read this provision to dictate against any recovery over by a third party. American Dist. Tel. Co. v. Kittleson, 81 F.Supp. 25 (N.D.Iowa 1948), rev'd., 179 F.2d 946 (8th Cir. 1950); Rich v. United States, 81 F.Supp. 587 (S.D.N.Y. 1948), rev'd., 177 F.2d 688 (2d Cir. 1949).

3. 2 A. Larson, Workmen's Compensation § 76.40, at 250.12 (1970) (footnote omitted).

4. Alaska's contribution statute is embodied in AS 09.16.010 which provides in pertinent part:

> (a) Except as otherwise provided in this chapter, where two or more persons become jointly or severally liable in tort for the same injury to person or property or for the same wrongful death, there is a right of contribution among them even though judgment has not been recovered against all or any of them.

The majority rule is that the exclusive remedy clause precludes recovery on a contribution theory. Since the employer's statutory liability is exclusive he is not jointly liable in tort, therefore he cannot be a joint tortfeasor liable for contribution to another tortfeasor. *See, e. g.,* Halcyon Lines v. Haenn Ship Ceiling & Refitting Corp., 342 U.S. 282, 72 S.Ct. 277, 96 L.Ed. 318 (1952); Maddux v. Cox, 382 F.2d 119 (8th Cir. 1967); McKenney v. Capitol Crane Corp., 321 F.Supp. 880 (D.C.Cir. 1971); Husted v. Consumers Power Co., 376 Mich. 41, 135 N.W.2d 370 (1965). The minority rule would recognize a limited contribution from the employer. 2 A. Larson, Workmen's Compensation, § 76.22 (1970).

5. An express contract of indemnity is the clearest exception to the exclusive liability clause. The courts will almost uniformly enforce an express contract where an employer agrees to indemnify a third party for money paid to an injured employee. *See, e. g.,* Porello v. United States, 153 F.2d 605 (2d Cir. 1946), aff'd. in part and rev'd. in part and remanded sub nom. American Stevedores, Inc. v. Porello, 330 U.S. 446, 67 S.Ct. 847, 91 L.Ed. 1011 (1947); Northwest Airlines v. Alaska Airlines, 343 F.Supp. 826 (D. Alaska 1972); Lowe v. California Co., 296 F.Supp. 1264 (E.D.La.1969); Western Union Tel. Co. v. Cochran, 302 N.Y. 545, 99 N.E. 2d 882 (1951); Tucci & Sons, Inc. v. Carl T. Madsen, Inc., 1 Wash.App. 1035, 467 P. 2d 386 (1970). *See generally* 2 A. Larson, Workmen's Compensation § 76.41 (1970).

6. 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133 (1956).

owner. The foundation for *Ryan* was laid by the United States Supreme Court in Seas Shipping Co. v. Sieracki [7] where the unseaworthiness strict liability doctrine was extended to longshoremen.[8] After *Sieracki* a longshoreman could recover from the shipowner if any portion of the ship was unseaworthy even though that condition may have been caused by the stevedore.[9]

In *Ryan*, a longshoreman who was injured when improperly stored cargo collapsed on him recovered from the shipowner on the ground that the vessel was unseaworthy and that the owner was negligent in failing to discover the defective storage. The shipowner sought indemnity from the stevedore-employer who had negligently loaded the ship. Looking to the contractual relation between the shipowner and stevedore, the court held that although the contract merely called for the performance of specified stevedoring operations it contained an implied-in-fact term, analogous to a manufacturer's implied warranty of fitness, that the services would be performed in a safe and workmanlike manner. The court then found a second implied agreement that the stevedore would indem-

nify the shipowner for any damages sustained by the latter because of the stevedore's breach of its duty to perform the work safely. Because the court relied on the contract analysis the exclusive-remedy clause of the Longshoremen's and Harbor Workers' Compensation Act was circumvented.[10] The stevedore's liability was said to be not "on account of the injury" but "on account of the contract" between the shipowner and stevedore and an independent breach of that contract by the stevedore.[11]

The Supreme Court's decision in *Ryan* has been defended as more than an elaborate ruse to avoid the clear mandate of the exclusive-remedy provision of the Longshoremen's Act. Professor Larson points out that it appears to be unquestioned that the exclusive-remedy clause does not bar recovery on an express indemnity provision. All a court needs to hold is that under some circumstances an indemnity agreement should be implied and in those cases there is no reason to distinguish it from an express agreement. It should also be noted that in a contract case, the parties are in a position to adjust distribution of losses between themselves beforehand,

7. 328 U.S. 85, 66 S.Ct. 58, 90 L.Ed. 1099 (1946).

8. *See* Barber v. New England Fish Co., 510 P.2d 806, 812 (Alaska 1973).

9. An unseaworthiness claim is more favorable to the injured employee than an ordinary negligence claim because it resembles a liability without fault action. Note, General Maritime Law Recognizes a Federal Remedy for Wrongful Death Caused by Unseaworthiness, 49 Tex.L.Rev. 128, 129 (1970).

10. Four dissenting justices argued that there was no implied indemnity term in the contract and felt that if indemnity was allowed it would be a clear violation of the Longshoremen's Act's exclusive-remedy clause (i. e., the flow of money would be from the employer to employee in spite of the Act's limitation of the employer's liability).
 The dissent's most persuasive argument was silenced by a subsequent amendment to the Act. Prior to the amendment the employee's cause of action against the third party was automatically assigned to the employer if the employee accepted benefits under the Act, with the employee receiving any excess recov-

ery over the amount of the compensation benefits paid. The dissent argued persuasively that the employer could not be expected to pursue the cause of action in good faith since he would face indemnity liability if he prevailed. 340 U.S. at 143–45, 100 L.Ed. at 101–102. The amended Act abolishes the election and allows the employee to sue the third party even after he receives benefits under the Act. 33 U.S.C. § 933(a) (1970), amending Longshoremen's and Harbor Workers' Compensation Act § 33, ch. 509, § 33, 44 stat. 1440 (1927). *See* 2 A. Larson, Workmen's Compensation § 76.43(a), n. 63, at 250.24 (1970). The Alaska statute was similarly amended in 1965. AS 23.30.015 (1972), amending AS 23.30.015 (1962).

11. 350 U.S. at 130, 76 S.Ct. 232, 100 L.Ed. at 140. Like the Alaska provision in question, the Longshoremen's and Harbor Workers' Compensation Act provision in question made the employers liability exclusive "and in place of all other liability of such employer . . . on account of such injury or death." 33 U.S.C. § 905 (1970), as amended, 33 U.S.C. § 905(a) (Supp.1973).

whereas, in a typical one-time tort case no such opportunity exists.[12]

Courts which have applied state law when faced with a problem similar to the one at bar are divided on what effect should be given to the principles set forth in *Ryan*. Some courts have rejected the implied indemnity doctrine, opining either that *Ryan* was a product of admiralty law, or that there was no implied obligation of indemnity under the circumstances of that particular case.[13] Others, when there was a contract between the parties, have implied the obligations of care and indemnity concluding that a recovery thereon is not precluded by an exclusive-remedy clause.[14]

The courts which refuse to apply the *Ryan* rationale to non-admiralty situations are correct in noting that *Sieracki* added a twist to the stevedore-shipowner relationship that similar land-based relationships lacked.[15] Certainly, if a shipowner is not at fault but is held liable to a longshoreman because the employer-stevedore's negligent act makes his ship unseaworthy, the case for allowing indemnity against the employer-stevedore is strong. In a typical land-based employer-third party contest, however, the third party will have been held liable to the employee because he was negligent. The only equity in his favor is that the employer was as much or more at fault and should therefore share all or part of his liability. Here the case for indemnity is much weaker. The *Ryan* doctrine has not been restricted in federal court, however, to cases where the shipowner-indemnitee was free from fault.[16] In Weyerhaeuser S. S. Co. v. Nacirema Operating Co.,[17] for example, indemnity was allowed even though the longshoreman's recovery was based on the shipowner's negligence and the jury had found that the ship was not unseaworthy.[18] Nor, at the opposite extreme, is it true that the third party-shipowner can recover indemnity no matter how much at fault he is. Although the court in *Weyerhaeuser* did caution that since indemnity was contract-based and that the use of the theories of "active versus passive" as well as "primary versus

---

12. 2 A. Larson, Workmen's Compensation § 76.43(a), at 250.24–.26 (1970). In *Ryan*, the majority stated:

> While the Compensation Act protects a stevedoring contractor from actions brought against it by its employee on account of the contractor's tortious conduct causing injury to the employee, the contractor has no logical ground for relief from the full consequences of its independent contractual obligation, voluntarily assumed to the shipowner, to load the cargo properly.

350 U.S. at 131, 76 S.Ct. at 236, 100 L.Ed. at 140.

13. *See, e. g.,* Central Stikstof Verkoopkanter, N. V. v. Walsh Stevedoring Co., 380 F.2d 523 (5th Cir. 1967) (applying Alabama law); Bagrowski v. American Export Isbrandtsen Lines, Inc., 305 F.Supp. 432 (E.D.Wis.1969) (applying Wisconsin compensation act); Hilzer v. MacDonald, 169 Colo. 230, 454 P.2d 928 (1969); American Radiator and Standard Sanitary Corp. v. Mark Eng'r. Co., 230 Md. 584, 187 A.2d 864 (Md.1963). *Cf.* Florida Power & Light Co. v. Hercules Concrete Pile Co., 275 F.Supp. 427 (S.D.Fla. 1967) (third party's fault precludes recovery from employer under Florida law).

14. *See, e. g.,* Blackford v. Sioux City Dressed Pork, Inc., 254 Iowa 845, 118 N.W.2d 559 (Iowa 1962); McDonnell Aircraft Corp. v. Hartman-Hanks-Walsh Painting Co., 323 S. W.2d 788 (Mo.1959); Vegetable Oil Prods. Co. v. Superior Court, 213 Cal.App.2d 252, 28 Cal.Rptr. 555 (1963); San Francisco Unified School Dist. v. California Bldg. Maintenance, 162 Cal.App.2d 434, 328 P.2d 785 (1958).

15. In Seas Shipping Co. v. Sieracki, 66 S.Ct. 58, 328 U.S. 85, 90 L.Ed. 1099 (1946), discussed *supra*, a longshoreman was allowed to recover from the shipowner for the unseaworthiness of the vessel. A shipowner may be held liable under the unseaworthiness rationale even if he is free of "fault" under traditional tort principles.

16. *But see* Florida Light and Power Co. v. Hercules Concrete Pile Co., 275 F.Supp. 427 (S.D.Fla.1967), where the court improperly attempted to encapsulate *Ryan* by limiting it to cases where the indemnitee was held strictly liable.

17. 355 U.S. 563, 78 S.Ct. 438, 2 L.Ed.2d 491 (1958).

18. See 2 A. Larson, Workmen's Compensation § 76.43(a), at 250.26–.57 (1970), for a detailed discussion of the *Weyerhaeuser* decision.

secondary" negligence was inappropriate,[19] the court did add the following dictum:

> If . . . respondent [stevedore] rendered a substantial performance which led to foreseeable liability of petitioner, the latter was entitled to indemnity *absent conduct on its part sufficient to preclude recovery.*[20]

As noted *supra,* at the state court level there is a sharp disagreement as to whether an indemnity agreement is to be implied from the employer-third party contract that can survive the exclusiveness defense. Indemnity in the employer-third party situation did not originate in maritime cases. In the 1938 case of Westchester Lighting Co. v. Westchester County Small Estates Corp.,[21] a lighting company employee was injured by gas escaping from a pipeline and successfully sued the owner of the line for his negligent failure to warn the employee of the danger. The New York court allowed the owner to recover indemnity from the lighting company because the latter's active negligence had caused the pipe to leak. The court held that indemnity was based on an independent obligation owed by the employer and was therefore not barred by the exclusive-remedy clause. *Westchester* and subsequent state cases used the same contractual analysis employed in *Ryan.*[22] Recognizing the split in authority and that this is a case of first impression in Alaska, I would hold that AS 23.30.055 *does not* prevent a third party from recovering from an employer under an indemnity-contract theory implied from the employer-third party contract.

It is also necessary to turn to the contract between Golden Valley and City Electric to determine (1) if the contract contains an implied-in-fact term that the employer will perform the contract in a safe and workmanlike manner, and (2) if the contract contains an implied-in-fact term that the employer will indemnify the third party if the first agreement is breached.

In the case at bar City Electric made a bid for furnishing "the labor and equipment necessary" to Golden Valley. On October 25, 1967, Golden Valley accepted the offer of City Electric, thus consummating the contract. *See* J. Calamari & J. Perillo, Contracts, §§ 25–38 (1970). I would hold that this agreement must also include the obligation on the part of City Electric to perform its work in a safe and workmanlike manner.[23] I also note that REA Form 804, Rev. 8/62 entitled "Specifications and Drawings for 7.2/12.5 Ku. Line Construction", authored by the Rural Electrification Administration provides "[a]ll construction work shall be done in a thorough and workmanlike manner . . . ." Both parties seemed to be relying on the above mentioned document, and its contents were referred to in the work order. If City Electric did not perform in a workmanlike manner it is impliedly obligated to indemnify Golden Valley for the damage caused by the breach of this first implied agreement. Ryan Stevedoring Co. v. Pan-Atlantic Steamship Corp., 350 U.S. 124, 130, 76 S.Ct. 58, 100 L.Ed. 133, 140 (1956).

---

19. 355 U.S. at 569, 78 S.Ct. 438, 2 L.Ed. 2d at 495. *See also* Italia Societa v. Oregon Stevedoring Co., 376 U.S. 315, 321, 84 S.Ct. 748, 752, 11 L.Ed.2d 732, 739 (1964), where the court stated:

> Recovery in contribution is imposed by law and is measured by the relative fault of the joint tortfeasors or shared equally between them . . . while recovery in indemnity for breach of the stevedore's warranty is based upon an agreement between the shipowner and stevedore and is not necessarily defeated by the shipowner's negligence, whether active or passive, primary or secondary.

20. 355 U.S. at 567, 78 S.Ct. at 441, 2 L.Ed. 2d at 494 (footnote omitted, emphasis added).

21. 278 N.Y. 175, 15 N.E.2d 567 (1938).

22. *E. g.,* Blackford v. Sioux City Dressed Pork, Inc., 254 Iowa 845, 118 N.W.2d 559 (Iowa 1962).

23. *See* Ryan Stevedoring Co. v. Pan-Atlantic Steamship Corp., 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133 (1956); Blackford v. Sioux City Dressed Pork, Inc., 254 Iowa 845, 118 N.W.2d 559 (Iowa 1962); McDonnell Aircraft Corp. v. Hartman-Hanks-Walsh Painting Co., 323 S.W.2d 788 (Mo.1959).

A further examination is necessary to determine whether the case at bar is an appropriate one to allow indemnity. What conduct by the employer and the third party will lead to the *Ryan*-type indemnity liability? Professor Larson emphasizes that although the Supreme Court has disclaimed use of negligence concepts in deciding whether indemnity should be allowed, the Court does use a comparative test and the relative fault of both parties is very important. He states:

> *Ryan* liability involves *two* implied agreements: an implied agreement of workmanlike performance, and an implied agreement to indemnify the shipowner in case of breach of the first agreement. As to the first, it is of course true that the third person's conduct is immaterial, in the sense that the stevedore can breach his implied contract of workmanlike performance even if the shipowner is actively negligent. As to the second agreement, however, it does not necessarily follow that for every breach of the implied agreement of workmanlike performance the second agreement—that of implied indemnity—comes into play. Whether this happens does indeed depend on the shipowner's conduct. Even an express agreement to indemnify the third party would not indemnify him against the consequences of his own negligence unless explicitly stated. How then could a mere implied agreement give rise to a higher degree of liability? [24]

The basis of the Court's comparative test is not the relative fault of the parties, *per se,* but rather their relative ability to prevent the injury. Since the person performing the contract is in a better position to protect the worker, he should bear the responsibility for those actions which increase the risk of harm to the worker. [25]

Professor Larson has devoted a substantial part of his treatise to a discussion of specific cases to help analyze the actual amount of relative fault in the employer and the third party that will sustain indemnity liability. The analytic scheme is set forth as follows:

> It has already been noted that the Supreme Court has cautioned in *Weyerhaeuser* against importing tort terminology into the essentially contractual problem of indemnity under *Ryan*. Specifically, the court ruled out the concepts of active versus passive negligence, and primary versus secondary negligence. A second reason could be added for shunning these terms, which is that they are unavoidably vague and notoriously awkward to apply in practice. For these reasons, the classification here adopted will employ the familiar distinction between creating a dangerous condition and failing to discover it. This distinction coincides in many typical cases with the distinction between active-primary and passive-secondary negligence. But it has the dual advantage of avoiding any reference to negligence or fault, and of turning of [sic] fairly specific descriptions of conduct rather than broad adjectives. Moreover, it covers a surprisingly high proportion of the facts of decided cases, and, with a little adjustment by way of analogy, can give guidance for the rest. [26]

From his analysis Professor Larson has isolated four principal patterns in the typi-

24. Larson, Workmen's Compensation: Third Party's Action Over Against Employer, 65 Nw.U.L.Rev. 351, 383 (1970) (footnote omitted).
 We do not hold that an indemnity agreement must refer explicitly to negligence in order for it to apply to the consequences of the indemnitee's negligence. Northwest Airlines v. Alaska Airlines, 351 F.2d 253, 256 (9th Cir. 1965).

25. [L]iability should fall upon the party best situated to adopt preventive measures and thereby to reduce the likelihood of injury.
 Italia Societa v. Oregon Stevedoring Co., 376 U.S. 315, 324, 84 S.Ct. 748, 754, 11 L.Ed.2d 732, 740 (1964).

26. 2 A. Larson, Workmen's Compensation § 76.43(a), at 250.43.

cal implied-indemnity situation.[27] (1) The employer creates a dangerous condition and the third party is held liable because of his failure to discover it. This is the fact pattern found in *Ryan* and American District Telegraph Company v. Kittleson.[28] The employer in this situation is held liable for indemnity. (2) If the situation is reversed, the third party creates the dangerous condition and the employer fails to discover it; indemnity will not be allowed.[29] (3) The third category is when the third party creates the dangerous condition and the employer discovers it but continues work. We would adopt what we consider the better rule in this situation and allow indemnity.[30] (4) In the last situation, the third party creates a dangerous condition which is latent and the employer activates it by his own affirmative conduct.[31] Here indemnity will be allowed if the employer breached his duty. These four categories can serve as the framework for most of the cases that arise and give guidance to the trial courts in preparing instructions in this area.

However, the guidance from the federal cases is insufficient as to what exactly constitutes conduct on the part of a third party "sufficient to preclude recovery" from the employer in all circumstances.[32]

But even if the stevedoring company [employer] was negligent, and even if its negligence "brought into play" the dangerous condition created by the shipowner [third party], the stevedore will not be liable in indemnity if in all the circumstances his conduct in its interplay with the conduct of the shipowner was not a breach of his implied agreement of workmanlike performance.[33]

Larson notes that the four categories mentioned above, which focus on the creation of or failure to discover a dangerous condition, meet the need of instructions in most cases and have the "advantage of concreteness".[34] When the rare situation arises which calls for a new instruction, there is little doubt that the court has appropriate tools to meet the problem.[35]

In the case at bar the specific facts are not apparent from the record.[36] Accordingly, remand would be necessary. On remand the trial judge would use the categories and standards set forth above in instructing the jury (if the case is tried before a jury) concerning whether indemnity will be allowed in this situation.

The standards outlined herein do not eliminate the "all or nothing" nature of the remedy. If indemnity is not allowed, the third party will bear the entire burden since AS 23.30.015 dictates that part of the employee's recovery from the third party shall be used to reimburse the employer for

---

27. *Id.* at 250.43–250.52.

28. 179 F.2d 946 (8th Cir. 1950).

29. *See, e. g.,* Humble Oil & Refining Co. v. Naquin, 414 F.2d 912 (5th Cir. 1969) ; American Mutual Liability Insurance Co. v. Matthews, 182 F.2d 322 (2d. Cir. 1950).

30. *Compare* American President Lines Ltd. v. Marine Terminals Corp., 234 F.2d 753 (9th Cir.), cert. denied, 352 U.S. 926, 77 S.Ct. 222, 1 L.Ed.2d 161 (1956) *and* United States v. Rothschild Int'l. Stevedoring Co., 183 F.2d 181 (9th Cir. 1950) *with* Hagans v. Farrell Lines, Inc., 237 F.2d 477 (3d Cir. 1956).

31. *See* Crumady v. Joachim Hendrik Fisser, 358 U.S. 423, 79 S.Ct. 445, 3 L.Ed.2d 413 (1959).

32. 2 A. Larson, Workmen's Compensation § 76.43(a), at 250.52 (1970).

33. *Id.* at 250.50.

34. *Id.* at 250.56.

35. *Id.* Professor Larson also points out that in the unique situation not covered by the four categories an instruction can be added from Restatement (First) of Contracts §§ 295, 315 (1932), regarding the excuse of a condition by prevention or hindrance on the part of the promisor.

36. At one point in the record, City Electric claimed that the situation fell into category two above and that there should be no indemnity. This is a matter for the trier of fact under appropriate instruction to decide.

whatever benefits he has paid out under the act. If indemnity is allowed the employer will bear the entire burden. When two parties are at fault it seems inequitable to make the entire burden fall on one party. At least one commentator has suggested that tort principles would furnish a better basis for resolving indemnity disputes than does contract law.

> [T]he Supreme Court can do much to introduce consistency and rationality into the resolution of indemnity problems by explicitly giving voice to what has long been the underlying rationale of its decisions in this area, casting aside the fictitious contractual warranty of the stevedore, and founding its analysis on modern tort principles. This action can easily be rationalized by pointing to the recent development outside the maritime field of an express tort rationale for manufacturer's liability, the very development to which the court drew a close analogy in the *Ryan* case. While it may be true that no real significance should be given to the mere verbal characterization of the theory upon which the court proceeds, as a practical matter utilization of the contract rationale forces the lower courts to rely on contract principles in working out the many problems in this area and to attempt to find some type of consensual basis to justify the results reached. On the other hand, recognition of the tort rationale would permit the courts to base their resolutions of the problems in this area upon well-recognized policy grounds without concerning themselves with whether or not the result thus reached was one that could reasonably be said to be within the intent of contracting parties.[37]

I would reverse and remand this case for further proceedings in accordance with this dissent.

---

37. Proudfoot, "The Tar Baby": Maritime Personal-Injury Indemnity Actions, 20 Stan.L.Rev. 423, 445 (1968).